FILED

2023 JUN -5  AM 10: 29

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CLERK. US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO. FL

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |
| v. | |
| VISION ONLINE, INC., a Florida corporation, also dba Ganadores Online, Winners Online, Ganadores Inversiones Bienes Raices, and Ganadores IBR, | |
| GANADORES IBR, INC., a Florida corporation, | |
| VISION ONLINE DIGITAL, LLC, a Florida limited liability company, | |
| VISION ONLINE ENGLISH, LLC, a Florida limited liability company, also dba Ecommerce Global Solutions, | |
| VISION ONLINE LATINO, LLC, a Florida limited liability company, | |
| RICHARD ALVAREZ, individually and as an owner, officer or manager of VISION ONLINE, INC., GANADORES IBR, INC., VISION ONLINE DIGITAL, LLC, VISION ONLINE ENGLISH, LLC AND VISION ONLINE LATINO, LLC, | |
| SARA ALVAREZ, individually and as an owner or manager of VISION ONLINE, INC., | |

1

ROBERT SHEMIN, individually,

and

BRYCE CHAMBERLAIN, individually,
and as an employee of VISION ONLINE,
INC.

      Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 5(m)(1)(A)-(B), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(m)(1)(A)-(B), 53(b), and 57b, which authorize the FTC to seek, and the Court to order, temporary, preliminary, and permanent injunctive relief, monetary relief, and other relief against Defendants for engaging in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended, the Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations ("Cooling-Off Rule"), 16 C.F.R. Part 429, and the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b.

## SUMMARY OF CASE

2.      Since at least 2019, operating under the Spanish brand names Ganadores Online (Winners Online) and Ganadores Inversiones Bienes Raices (Winners Real Estate Investments) (collectively, "Ganadores"), Defendants have sold purported money-making training, mentoring, and business opportunities to Spanish-speaking consumers.

3.      Using false and unsubstantiated earnings claims and related misrepresentations, Defendants entice consumers to pay thousands of dollars for an "infallible system" that does not require a significant amount of money, good credit, or legal immigration status to succeed.

4.      Defendants regularly push consumers to take on significant credit card debt to pay for bogus products and services ("products"), falsely representing that consumers will quickly recoup their "investment."

5.      Defendants' scheme focuses on Spanish-speaking consumers and many attendees at their sales events do not read and understand documents in English.   Defendants, however, often provide attendees with important documents, such as purchase agreements that outline the cancellation policy, which are exclusively in English.

6.      Defendants often reject consumers' refund requests as untimely.

When consumers report their negative experiences to law enforcers or the Better Business Bureau, Defendants may offer a partial refund, but only if consumers withdraw their complaints and commit not to post negative reviews about Defendants.

7.      The Ganadores scheme is a virtual copycat, repackaged in Spanish, of the deceptive Zurixx and FBA Stores/Amazing Wealth System ("FBA Stores") schemes that courts shut down following FTC enforcement actions.   *See FTC v. Zurixx LLC*, No. 2:19-cv-713 (D. Utah filed Sept. 30, 2019) and *FTC v. AWS, LLC*, No. 18-cv-00442-JCM (D. Nev. Filed March 12, 2018).   Indeed, Defendants Richard Alvarez, Shemin and Chamberlain were employees or subcontractors for Zurixx who worked together on selling the scheme to Spanish speakers.   Shemin acted as a workshop speaker and Chamberlain managed the workshops throughout the country as a Workshop Director.   Richard Alvarez also conducted sales to Spanish speakers for the FBA Stores scheme and his wife, Defendant Sara Alvarez, worked for that scheme.   Richard Alvarez, Shemin and Chamberlain made hundreds of thousands of dollars each from these previous similar schemes. Defendants Richard and Sara Alvarez, Robert Shemin, and Bryce Chamberlain, however, were not named as defendants in the Zurixx and FBA Stores actions.

8.      Defendants have bilked Spanish-speaking consumers throughout the

4

country out of tens of millions of dollars while violating the FTC Act, the Business

Opportunity Rule, the Cooling Off Rule, and the CRFA.   As a result of their

scheme, many consumers have been saddled with ruined credit histories and credit

card bills they cannot afford to pay.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

1331, 1337(a), 1345, and 1355.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(1),

(c)(2), (c)(3), and (d), 1395(a), and 15 U.S.C. § 53(b).

## PLAINTIFF

11.      The FTC is an independent agency of the United States Government

created by statute.   15 U.S.C. §§ 41-58.   The FTC enforces Section 5(a) of the

FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in

or affecting commerce.   The FTC also enforces the Business Opportunity Rule, 16

C.F.R. Part 437.   The Business Opportunity Rule addresses common deceptive or

unfair practices engaged in by fraudulent business opportunity sellers such as

inducing consumers to pay significant sums of money by means of false or

unsubstantiated earnings claims.

12.     The FTC also enforces the Cooling-Off Rule, 16 C.F.R. Part 429, which requires sellers of certain goods or services at places other than the seller's place of business to notify buyers of their right to cancel the transaction within three business days and prohibits sellers from misrepresenting buyers' right to cancel.

13.     The FTC also enforces the CRFA, 15 U.S.C. § 45b.   The CRFA prohibits the offering of provisions in form contracts that restrict individual consumers' ability to communicate reviews, performance assessments, and similar analyses about a seller's products, services, or conduct.

14.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the Business Opportunity Rule, the Cooling Off Rule, and the CRFA and to secure such relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, other equitable relief, and damages. 15 U.S.C. §§ 53(b); 57b; the Business Opportunity Rule, 16 C.F.R. Part 437; the Cooling-Off Rule, 16 C.F.R. Part 429; and the CRFA, 15 U.S.C. § 45b.

## DEFENDANTS

### The Corporate Defendants

15.     Defendant **Vision Online, Inc. ("Vision")**, also doing business as Ganadores Online, Winners Online, Ganadores Inversiones Bienes Raices, and Ganadores IBR, is a Florida corporation with its principal place of business at 733 W. Colonial Dr Orlando, FL 32804.   Previously, Vision's principal place of business was 5449 S. Semoran Blvd, Ste 200, Orlando, FL 32822.   Vision transacts or has transacted business in this District and throughout the United States.   At all times relevant to this Complaint, acting alone or in concert with others, Vision has advertised, marketed, distributed, or sold business opportunities, and training and mentoring products relating to real estate and online commerce to consumers throughout the United States.

16.     Defendant, **Ganadores IBR, Inc.,** is a Florida corporation with its principal place of business at 733 W. Colonial Dr Orlando, FL 32804.   Ganadores IBR was formed on or about February 22, 2021.   Previously, Ganadores IBR's principal place of business was 5449 S. Semoran Blvd, Ste 200, Orlando, FL 32822.   Ganadores IBR transacts or has transacted business in this District and throughout the United States.   At all times relevant to this Complaint, acting alone or in concert with others, Ganadores IBR has advertised, marketed, distributed, or

7

sold business opportunities, and training and mentoring products relating to real estate to consumers throughout the United States.

17.     Defendant, **Vision Online Digital**, LLC, was a Florida limited liability company with its principal place of business at 5449 S. Semoran Blvd, Ste 200, Orlando, FL 32822.   Vision Online Digital was organized on or about June 5, 2019, and was voluntarily dissolved on or about September 24, 2021.   Between June 5, 2019, and September 24, 2021, acting alone or in concert with others, Vision Online Digital advertised, marketed, distributed, or sold business opportunities, and training and mentoring products relating to online commerce to consumers throughout the United States.

18.     Defendant, **Vision Online English**, LLC, also doing business as Ecommerce Global Solutions was a Florida limited liability company with its principal place of business at 5449 S. Semoran Blvd, Ste 200, Orlando, FL 32822. Vision Online English was organized on or about May 9, 2019, and was voluntarily dissolved on or about January 29, 2021.   Between May 9, 2019, and January 29, 2021, acting alone or in concert with others, Vision Online English advertised, marketed, distributed, or sold business opportunities, and training and mentoring products relating to online commerce to consumers throughout the United States.

8

19.     Defendant, **Vision Online Latino, LLC**, was a Florida limited liability company with its principal place of business at 5449 S. Semoran Blvd, Ste 200, Orlando, FL 32822.   Vision Online Latino was organized on July 12, 2018, and was voluntarily dissolved on or about February 11, 2021.   Between July 12, 2018, and February 11, 2021, acting alone or in concert with others, Vision Online Latino has advertised, marketed, distributed, or sold business opportunities, and training and mentoring products relating to online commerce to consumers throughout the United States.

20.     Hereinafter, the Complaint will refer to Vision, Ganadores IBR, Inc., Vision Online Digital, LLC, Vision Online English, LLC, and Vision Online Latino, LLC collectively as the "Corporate Defendants."

### The Individual Defendants

21.     Defendant **Richard Alvarez** is the founder, CEO, and an owner of Vision and Vision Online English, and is the president of Ganadores IBR and the CEO of Vision Online Digital and Vision Online Latino.   Richard Alvarez resides in Orlando, Florida.   At times relevant to this Complaint, acting alone or in concert with others, Richard Alvarez has formulated, directed, controlled, had authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint.

9

22.     Richard Alvarez identifies himself in financial documents as the 100% owner of Vision and has overseen the Ganadores scheme's day-to-day operations.

23.     Richard Alvarez regularly appears in Ganadores ads, presents at Ganadores sales events, and communicates with prospective and current customers.

24.     Richard Alvarez has communicated and negotiated with many dissatisfied Ganadores customers who sought refunds or chargebacks.

25.     Richard Alvarez has signed agreements with payment processors on behalf of Vision and Vision Online English, an agreement with a payroll provider on behalf of Vision, is the registered contact for Defendants' phone service company as well as with the domain registrar for Defendants' websites, and is a signatory on bank accounts of all the Corporate Defendants.

26.     Richard Alvarez, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

27.     Prior to leading the Ganadores scheme alleged herein, Richard Alvarez was a salesperson and presenter for the similar real estate and e-commerce training and mentoring schemes of Zurixx and FBA Stores/Amazing Wealth

System.   Both schemes were sued by the FTC, in 2019 and 2018 respectively, for
deceiving consumers.

28.   As in the Ganadores scheme, Zurixx encouraged consumers to raise
the limit on their credit cards or obtain additional credit cards to pay for Zurixx's
products, falsely promising a quick recoupment.

29.   Similarly, the FTC and the State of Utah alleged that Zurixx lured
consumers with lavish false or unsubstantiated earnings claims, just as Ganadores
uses false or unsubstantiated earnings claims to attract consumers.   Richard
Alvarez worked for Zurixx from 2014 to at least 2018 and actively participated in
Zurixx's efforts to entice consumers.   For example, a couple from North Carolina
reported that in January 2016, Richard Alvarez convinced them to use newly
obtained credit to pay $40,000 for a Zurixx mentoring package, promising that
they would make more than $40,000 through real estate deals within six months,
and that the package "paid for itself."

30.   Richard Alvarez led Zurixx's efforts targeting the Spanish-speaking
community.

31.   Finding that the FTC was likely to succeed on the merits of its claims
against Zurixx, a district court in Utah issued a temporary restraining order against
the scheme and appointed a receiver over the company.   Zurixx ceased operations

and ultimately settled with the FTC.  *See* https://www.ftc.gov/legal-
library/browse/cases-proceedings/182-3063-x190047-zurixx-llc.

32.    Richard Alvarez also was a salesperson for FBA Stores, a fraudulent
scheme that purported to show consumers how to make money on Amazon.
Richard Alvarez worked at FBA Stores from at least November 2016 up until
March 2018 when FBA Stores was sued by the FTC.  He led FBA Stores' efforts
targeting the Spanish-speaking community.

33.    The FTC alleged that FBA Stores lured consumers with lavish false or
unsubstantiated earnings claims.  While not named as a defendant in that action,
Richard Alvarez actively participated in the deception.  For example, a consumer
reported that at a sales event in Denver, Colorado in October 2017, Richard
Alvarez stated that buyers of FBA Stores' mentoring packages could expect to
make anywhere between $5,000 and $10,000 in the first month, "guaranteed."

34.    Finding that the FTC was likely to succeed on the merits of its claims
against FBA Stores, a district court in Nevada issued a temporary restraining order
against the scheme and appointed a receiver over the company.  FBA Stores
ceased operations and ultimately settled with the FTC.  *See,*
https://www.ftc.gov/legal-library/browse/cases-proceedings/172-3149-aws-llc-et-
al-fba-stores.

35.    Richard Alvarez has netted more than $1,600,000 from the Ganadores scheme so far.

36.    Defendant **Sara Alvarez** is the wife of Richard Alvarez and has identified herself as an owner and manager of Vision on bank documents.   Sara Alvarez resides in Orlando, Florida.   At times relevant to this Complaint, acting alone or in concert with others, Sara Alvarez has formulated, directed, controlled, had authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint.

37.    Sara Alvarez has signatory authority over Vision bank accounts and has worked at workshops collecting consumers payments for mentoring packages. She has received more than $143,000 from the scheme.

38.    Like her husband, Sara Alvarez previously worked on the FBA Stores scheme.   She was listed as a workshop "sales closer" for the FBA Stores scheme.

39.    Defendant **Robert Shemin ("Shemin")** has been Richard Alvarez's partner in Ganadores.   Shemin has presented at numerous Ganadores sales events, making claims about earnings.   He also has played a leading role in Defendants' marketing videos and social media posts, where he is portrayed as a successful real estate investor.

13

40.     Consumers who purchase real estate investment mentoring from Defendants are routinely told that their training will include working with Shemin, and he has appeared in Ganadores webinars.

41.     Shemin has regularly communicated with Ganadores customers, including making sales pitches and discussing consumer complaints.

42.     Shemin has managed the day-to-day operations of the Ganadores scheme with Richard Alvarez, and in matters relating to the Ganadores scheme, Shemin has referred to Richard Alvarez as his partner.   Shemin's signature appears on Ganadores consumer purchase agreements.   Shemin has negotiated with dissatisfied customers who sought refunds or chargebacks, and he has paid individuals to participate as mentors at Ganadores events, including at bootcamps and to be Ganadores "consultants."

43.     At times relevant to this Complaint, acting alone or in concert with others, Shemin has formulated, directed, controlled, had authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint.

44.     Shemin claims to reside in the Republic of Colombia, but has identified a South Miami, Florida address on his Florida driver's license and a Miami, Florida address on an account at Wells Fargo Bank, and in connection with

the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

45.     Like Richard Alvarez, from at least 2013 until September 30, 2019, Shemin was a salesperson and presenter for Zurixx.   Records obtained by the FTC show that Shemin made numerous deceptive representations in Zurixx sales events, including false earnings claims that purchasers of Zurixx's mentoring packages would receive 100% funding to do real estate deals regardless of their credit, and that consumers could spend little time and effort to make thousands of dollars in profit through real estate investment.

46.     Shemin is the founder, owner and sole officer of Robert Shemin Worldwide, LLC ("Worldwide"), a Florida limited liability company with its principal place of business at 1400 NW 107th Ave, STE 203, Sweetwater, FL 33172.   Shemin has used Worldwide to pay various Ganadores-related costs, including paying individuals to participate as "mentors" at Ganadores sales events and act as Ganadores consultants.

47.     Shemin has netted at least $1 million from the Ganadores scheme using the same deceptive practices he employed in the Zurixx scheme.   This includes more than $597,000 transferred from the Corporate Defendants to his

company, Worldwide, reflecting, among other things, payments from Ganadores for webinars, workshops, and call center services costs.

48.     Defendant **Bryce Chamberlain** resides in Springville, Utah.   At times relevant to this Complaint, acting alone or in concert with others, Chamberlain has formulated, directed, controlled, had authority to control, or participated in the acts and practices of the Corporate Defendants, including the acts and practices set forth in this Complaint.

49.     Chamberlain is an employee of Vision and has regularly led Ganadores sales events as Workshop Sales Director, making sales pitches to prospective purchasers.

50.     Chamberlain has posted fake positive reviews about Ganadores on the internet without identifying his affiliation with the scheme.   Chamberlain, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

51.     Like in the Ganadores scheme, Chamberlain was a supervisor and Workshop Director at Zurixx, where he worked with Shemin and Alvarez on deceptive marketing and sales events and presented at Zurixx workshops. Chamberlain worked for Zurixx from at least 2013 to at least September 30, 2019.

16

52.     Chamberlain is an owner and officer of Chamberlain Marketing, Inc. ("Chamberlain Marketing"), a Utah corporation with its principal place of business at 1896 Cobblestone Rd, Springville, UT 84663.

53.     Chamberlain has netted more than $428,000 from the Ganadores scheme that was transferred to his company, Chamberlain Marketing.

54.     Hereinafter, the Complaint will refer to Richard Alvarez, Sara Alvarez, Robert Shemin, and Bryce Chamberlain collectively as the "Individual Defendants" and to the Corporate Defendants and Individual Defendants collectively as "Defendants."

## COMMON ENTERPRISE

55.     Corporate Defendants Vision, Ganadores IBR, Vision Online Digital, Vision Online English, and Vision Online Latino have operated as a common enterprise while engaging in the deceptive acts or practices and other violations of the law alleged herein.   The Corporate Defendants have conducted the business practices described herein through an interrelated and interdependent network of companies that have a common business purpose, ownership, officers, managers, members, business functions, and office locations, and have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein.

17

56.     Individual Defendants Richard and Sara Alvarez, Shemin, and Chamberlain have formulated, directed, managed, controlled, or had the authority to control the acts or practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

57.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

58.     Since at least October 2019, Defendants have advertised, marketed, distributed, promoted, and sold business opportunities and training and mentoring packages to consumers throughout the United States using multiple names, including Ganadores Online and Ganadores Inversiones Bienes Raices.

59.     Defendants have targeted Spanish-speaking consumers by placing Spanish-language ads on social media platforms such as Facebook, Instagram, and YouTube.

60.     The Ganadores training and mentoring packages purport to show consumers how to make substantial income through real estate investment or investing in/setting up an online store.

18

61.     The Ganadores training packages typically involve a three-day workshop costing between $197 and $600.

62.     The Ganadores mentoring packages purport to offer business coaching, mentoring, and related services, and typically cost between $8,995 and $28,995.

63.     The Ganadores sales funnel follows the sales process previously used by the Zurixx and FBA Stores schemes, in which the Individual Defendants were involved.   The sales funnel starts with an ad, most commonly on social media, inviting consumers to attend a free "seminar" purporting to teach consumers how to make money via real estate investments or online stores.

64.     The seminar, typically running about two hours, is, in truth, a sales event in which consumers are pitched the Ganadores three-day "workshop," which purportedly will teach attendees all they need to know to establish and operate a successful real estate investment business or online store.   But like the seminar, the workshop is really a sales event, this time for the Ganadores mentoring packages.

65.     While Defendants have used separate tracks to market their real estate and online store packages, both follow the sales funnel described in Paragraphs 63-64.

66.     Defendants use deceptive earnings claims and related lies to entice consumers to purchase Ganadores packages.

67.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

### The Free Seminar – A Sales Event for the Three-Day Workshop

68.     Defendants have marketed the Ganadores free "seminars" via Spanish language ads on the internet and through social media.   For example, a YouTube ad dated May 2019 that ran through at least June 2021 features a Ganadores Online student who claims that Ganadores offers an opportunity for economic independence.   In another ad dated May 2019 that ran through at least June 2021, Richard Alvarez says that he and his wife have "freedom" that allows them to go anywhere because of their online business.   Richard Alvarez touts the free Ganadores Online seminar coming soon to the viewer's area that will show consumers strategies of how to make "explosive sales" running an Amazon store.

69.     Facebook and Instagram posts, such as the one depicted below, that have been posted since at least July 2022, tout Ganadores as a Latino community of investors who have created an "infallible system to invest in real estate," and promise that seminar attendees will learn how to earn substantial income from real

estate.



**EL SISTEMA INFALIBLE PARA INVERTIR EN BIENES RAÍCES A TU ALCANCE.**

APRENDE EL MÉTODO DE RICHARD ÁLVAREZ Y DESPÍDETE DEL HÁBITO DE RENUNCIAR ANTES DE TIEMPO



70.     Similarly, an August 2022 Twitter post linked to Defendants' website ganadoresinversionesbienesraices.com states in Spanish:   Learn to invest in real estate with the "infallible system" of Richard Alvarez.

71.     The Ganadores social media posts often state that consumers do not need good credit or money to succeed in real estate investment, and that Ganadores "students close their first deal in three months."

72.     Defendants typically host the Ganadores seminars in hotels, although some seminars (especially during the COVID-19 pandemic) have been hosted

online.

73.     While the Ganadores ads promise that the seminar will teach consumers about investing in real estate or running a successful online store, in truth, the seminar teaches consumers very little, if anything, of that sort.   Instead, the seminar is a sales event for the Ganadores three-day workshop.   Ganadores salespeople claim that at the workshop consumers will learn everything they need to know "A to Z" to make money via real estate investment or online stores.

74.     Ganadores representatives state that purchasers of the real estate investment workshop will be taught by Richard Alvarez and Shemin, whom they describe as "experts" who made a fortune investing in real estate.   They promise that workshop attendees will be ready to close a real estate deal at the workshop or "the next Monday," and will learn how to find properties to fix and flip or to rent out, secure funding for deals, and make money on container home projects.

75.     Ganadores representatives have told seminar attendees that people who attended the workshop have quit their day jobs because of the money they have made as real estate investors.

76.     Defendants often advertise specific dollar figures that their customers earn.   For example, at a February 2022 seminar in Las Vegas, Nevada, a Ganadores representative stated that a customer who invested in a house in

Orlando could make more than $7,000 a month renting it via Airbnb, and that a Ganadores "student" and Richard Alvarez would earn $2,655,000 on a deal on a property in West Palm Beach.

77.     Similarly, at a March 2019 online e-commerce workshop, Ganadores representatives told consumers that they should anticipate $30,000 a month in sales via their Amazon store with $10,000 a month in profit.

78.     Defendants often use purported industry data to convince seminar attendees that they can make a lot of money if they purchase the Ganadores training.   For example, at a February 2022 seminar in Las Vegas, Nevada, a Ganadores presenter used such data to convince attendees that income from "flipping houses" was at the highest in 20 years.   The presenter also displayed a slide with CNBC's logo that showed an article stating that the average house flipping income per deal in Quarter 3 of 2019 was $61,800 and that Quarter 3 of 2020 was $73,766.   The presenter then said that in 2021 the average income from a house flip brought in three types of profit: (1) $80,000 to $120,000 in "potential deal profit," which swelled even further due to (2) bidding wars ("overpricing profit") and (3) equity escalating on a monthly basis ("equity profit").

79.     Defendants often represent to seminar attendees that they can teach the attendees how to make substantial income through real estate or online stores

23

even if the attendees have no experience, cash, good credit, or legal immigration status.

80. Defendants often tell seminar attendees that purchasers of the real estate investment workshop will be shown how to purchase properties and convert them into profitable short-term rentals, stating that Airbnb.com will provide the short-term renters to the purchasers' properties.

81. Defendants often represent that purchasers of the real estate investment workshop will be shown how to purchase properties and sell them for profit to wholesale buyers via the residential real estate brokerage site Myhousedeal.com, stating that the website will provide Ganadores purchasers with access to wholesale buyers.

82. Defendants have often represented to attendees of the online commerce seminar that online-selling workshop attendees would learn everything they need to know to establish and operate a profitable online store on Amazon.com. Once the store is up and running, Amazon.com will provide Ganadores purchasers with access to customers.

83. Ganadores representatives routinely tell seminar attendees that they are giving them a very large discount for the workshop. Furthermore Defendants often represent at real estate investment workshops that the mentoring package

includes a list of contacts of vetted lenders, where consumers can get favorable financing for real estate deals, even if they do not have good credit.

84.     While Ganadores targets Spanish-speaking consumers and the seminars are in Spanish, in many instances, the purchase agreement for the workshop is in English.

85.     Ganadores salespeople have called consumers who made no purchase at the seminar, falsely posing as happy Ganadores customers, and raved about the training in attempt to convince the consumers to purchase the workshop package.

86.     For example, in or about July 2020, a consumer participated in an online seminar for the Ganadores online store business opportunity.   The consumer made no purchase at the online seminar.   A few days later, the consumer received a call from Ganadores employee Tatiana Bello.   Ms. Bello, who frequently appears in Ganadores workshops, introduced herself as a satisfied Ganadores customer and told the consumer that, based on what she learned at a Ganadores workshop, she was able to make enough money selling merchandise on Amazon that she had been able to leave her old job within a couple of months.

**The Three-day Workshop – A Sales Event for the Mentoring Packages**

87.     Ganadores typically holds its workshops in a hotel, a few weeks after the seminar, in the same geographical area.   The workshops are largely in Spanish

25

and many attendees do not speak or read English fluently.

88.     Richard Alvarez frequently tells workshop attendees that "teaching" is his way to give back to and raise up the Spanish-speaking community.  At the workshops, Richard Alvarez claims that he created Ganadores to help Spanish-speakers by teaching them everything they need to know about making money in real estate, to serve as a mentor, and to provide Spanish-speaking mentors to others.

89.     During the workshop, attendees are divided into groups based, in part, on English fluency and how they respond to Ganadores asking them what language the attendee prefers communicating in.   Attendees are assigned to salespeople, referred to by Ganadores as "team mentors" or "coaches," for the duration of the workshop.   Attendees who cannot read or write English fluently are assigned salespeople who communicate with them in Spanish.

90.     While Defendants claim at the seminar that the workshop will teach attendees everything they need to know to make money in real estate or through an online store, these topics are only covered in general terms at the workshop.   In truth, the workshop is a sales event for the Ganadores mentoring packages.

91.     At real estate investment workshops, Defendants often tell attendees that consumers who join Ganadores to invest in real estate can purchase properties

and convert them into profitable short-term rentals, stating that Airbnb.com will provide the short-term renters to the purchasers' properties.

92.    Defendants often represent that purchasers of the real estate investment mentoring packages will be shown how to purchase properties and sell them for profit to wholesale buyers via the residential real estate brokerage site Myhousedeal.com, stating that the website will provide Ganadores purchasers with access to wholesale buyers.

93.    Defendants have often represented to attendees of the online commerce workshop that purchasers of online-selling mentoring packages would learn everything they need to know to establish and operate a profitable online store on Amazon.com.   Once the store is up and running, Amazon.com will provide Ganadores purchasers with access to customers.

94.    Ganadores lures attendees into purchasing a mentoring package by representing it will provide the purchasers with all the support they need to establish and run a successful real estate investment or online store business.

95.    Ganadores representatives tell workshop attendees that mentoring package purchasers will receive extensive mentoring.   Some consumers have been told that they will be paired with mentors who will personally guide purchasers "by the hand," step-by-step, so that they will have "no way to lose."

27

96.     Richard Alvarez and Shemin have personally assured workshop attendees who were debating whether to buy that they would personally mentor them.

97.     When workshop attendees balk at the high cost of the mentoring packages, Ganadores often uses high pressure sales tactics, including telling attendees that the packages are only available for selectively-chosen prospects at the workshop, and that they do not have a lot of time left to decide; the "team mentors" see a lot of potential in them to be successful; and they should purchase the mentoring package to provide a better life for their family.

98.     Defendants misrepresent that the Ganadores mentoring packages are only offered for a limited time for selectively chosen consumers at the workshop. In truth, Defendants will generally sell a mentoring package to any consumer who agrees to pay for it, and consumers can purchase packages outside of a workshop.

99.     In some instances, Ganadores representatives have urged workshop attendees to liquidate retirement savings accounts to pay for mentoring packages.

100.    Attendees who agree to purchase a mentoring package are often touted by Ganadores representatives as "winners."

**Defendants Mislead Consumers into Providing Financial Information**

101.    Ganadores representatives ask workshop attendees to provide detailed

28

financial information in order to determine if the attendees "qualify" for a "selective" Ganadores mentoring package.   Richard Alvarez has compared qualifying for Ganadores mentoring to the process of "qualifying for a university."

102.   Attendees are instructed to list the total of their bank and retirement accounts, all other assets, credit card limits, and any debt.

103.   In truth, Defendants do not seek that information to decide which attendees qualify for the purportedly selective mentoring, but to determine ability to pay so Ganadores salespeople (deceptively titled "team mentors" or "coaches") know which prospects to focus on.

### Defendants Use Earning Claims at the Workshop

104.   At the workshop, Defendants use earnings claims and make enticing claims about the mentoring packages, creating the impression that purchasers are likely to make substantial income as real estate investors or online sellers.

105.   Defendants make earnings claims through testimonials from purportedly successful customers and presenters, examples of profitable purported real estate deals, references to news items and industry data, lavish lifestyle claims, and discussions about how much mentoring-package buyers should expect to earn.

106.   Defendants provide real estate workshop attendees with a workbook that contains "examples" of real estate deals, noting the profit the deal achieved.

29

For example, a workbook provided to attendees at a May 2022 workshop in Glendale, California, included three purported deals showing net income of $21,400, $48,600, and $1,068,000.

107.   Richard Alvarez, Shemin, Chamberlain, other presenters, and purported Ganadores customers also provide testimonials about how much money they have purportedly made via online selling or real estate investment, and how that income has provided them with the financial freedom to quit their jobs, be their own bosses, and provide generational wealth for their family.

108.   For example, Richard Alvarez routinely claims that he has made millions in real estate investment and developing container homes.   He also tells workshop attendees about his purported luxury lifestyle.   For example, at a February 2022 Las Vegas real estate investment workshop, Richard Alvarez claimed that a property in Puerto Rico that he posted on Airbnb is netting him $14,210 a month.

109.   Shemin has represented to workshop attendees that his success in real estate supports a luxury lifestyle.   For example, in a June 2021 real estate workshop in Washington, DC, he told attendees that he lives in a penthouse condominium in South Beach, Florida, with rap stars as neighbors, and that after spending about five years in real estate investment, he had earned so much money

30

that, starting in 2000, he and his son no longer needed to work.

110.    Defendants routinely quote purported industry data at workshops to encourage attendees to buy Ganadores mentoring packages.   For example, at the June 2021 workshop in Washington, DC, Shemin told attendees that the median amount people earn from fixing and flipping was about $77,000.

111.    Ganadores presenter Gustavo Acosta has told attendees at many workshops that until he joined Ganadores, he was living paycheck to paycheck. Since joining Ganadores, Acosta has purportedly completed multiple real estate deals, making about $40,000 to $50,000 on each, now earning enough money in real estate that he can provide for his family and no longer has to work for others.

112.    At a June 2021 real estate workshop in Washington, DC, a purported Ganadores customer named Alma Dubón told attendees she went from living on call and tied to a pager as a heart surgery nurse to being able to quit her job to do real estate full-time.   Another purported Ganadores customer at the workshop, Alexander Vazquez, told attendees that he completed seven real estate deals in six months.

113.    At a February 2022 Las Vegas real estate workshop, Richard Alvarez told attendees that in six months, attendees could do deals on two houses that would basically pay off their debt from purchasing the mentoring package, and that

their goal in a year was to have two million dollars in real estate paying them $20,000 a month.

114.   Ganadores representatives routinely make earnings claims while instructing workshop attendees to get new credit cards, or increase the limits on existing cards, purportedly to have funds to invest in real estate.   Representatives often provide attendees with a document entitled Como Financiar Su Negocio ("How to Finance Your Business").   In some instances, such as at a May 2022 workshop in Glendale, California, the Como Financiar Su Negocio document states or indicates that consumers will earn annual income of $100,000 to $112,500 from their real estate business.   Furthermore, in some instances where consumers do not speak English fluently, Ganadores representatives have gotten on the phone with the consumers' credit card companies, pretending to be the consumers, in an effort to increase credit limits.

115.   Ganadores representatives often verbally tell workshop attendees that they should anticipate earning an annual income of $112,500 from investing in real estate, the mentoring package pays for itself, and the purchaser will be able to pay off the package quickly with his or her first deal.

116.   For example, at the May 2022 workshop in Glendale, California, Richard Alvarez's adult son, who worked at the workshop, told an attendee that the

attendee could make all of the money he invested in buying the Ganadores mentoring package back in a single deal.

117.   In numerous, if not most, instances, Ganadores mentoring package purchasers make little to no money and do not recoup the price of the mentoring package quickly, or at all.   Many, if not most, purchasers have not been able to use its products to close any real estate deals.   And most purchasers, if not all, do not make the promised six-figure annual income.

## Defendants' Disclaimers Do Not Cure Their Deception

118.   Defendants often include written disclaimers in forms they require attendees to sign and return at live events and in sales contracts.   However, these disclaimers are neither clear nor conspicuous, and are often in English, while the events are in Spanish, and Defendants know many attendees cannot read English fluently.

119.   For example, prior to attending a workshop, as part of completing their registration, attendees are required to sign and return multiple documents, including a Ganadores IBR "Event Agreement," which includes the following language (translated from Spanish) mixed in with text about a variety of other subjects: "I understand and agree that no results and/or any kind of monetary gain from this event or training are guaranteed by Ganadores Inversiones Bienes

33

Raíces."

120.    The Ganadores Real Estate Investment Mentoring Package Sales

Agreements have included the following dense disclaimer, often in English, on the

back of the purchase contract along with three pages of small-print paragraphs that

each must be initialed:

> Ganadores Inversiones Bienes Raíces does not make guarantees of
> earnings or ranges thereof. Ganadores Inversiones Bienes Raíces does
> not offer guarantees regarding the results, earnings and / or income
> related to any of the services or offers offered in the digital and / or
> face-to-face event, either its own or from third parties. The information
> provided, including through any of our promotional channels, services,
> programs or offers, is intended for educational purposes only and does
> not constitute an opportunity to get rich. Your use of any information
> that is presented, including through a program or service that you
> purchase through this digital and / or face-to-face event, must be based
> on your own due diligence and determination that it is fit for purpose.
> Any examples or statements regarding earnings or income made by
> Ganadores Inversiones Bienes Raíces, advertisers, sponsors, or
> affiliates are provided as examples or estimates only of what we believe
> may be possible. You acknowledge that any estimates or examples
> provided do not in any way guarantee that you will achieve the same or
> similar level of results or income, and that previous results do not reflect
> average results. We make no representations regarding average results
> or earnings related to the information or offers we provide.
> Accordingly, there is no guarantee that the same individuals or anyone
> else, including you, will duplicate past earnings examples in the future.
> You agree that results vary by individual and are based on a wide
> variety of factors which may include, your skills, knowledge, capacity,
> dedication, business prowess, network and financial situation, industry
> situation, among other factors, some of the which may be beyond your
> influence or control. You assume all risks related to the use of the
> information we present and agree that we are not responsible for any of
> your actions. Most people in business and real estate don't follow or

34

stick with systems, and many earn nothing. Before buying anything, I declare that I have read and understood this and that I take full responsibility for the success and failure of my business.

121.   A Ganadores Real Estate Investment Workshop Sales Receipt included similar language.

122.   Defendants' purported disclaimers are neither clear nor conspicuous, and do not cure the impression created by their extensive and repeated use of detailed earnings and related claims that purchasers of Defendants' products are likely to earn substantial income.

### Defendants Tell Attendees to Secure New Credit for Investing in Real Estate and Online Commerce, Then Encourage Them to Use It to Pay Defendants

123.   The Como Financiar Su Negocio handout instructs workshop attendees how to apply for "investment cards" (a term previously used by Zurixx), which are merely credit cards.   The handout recommends applying for five to eight cards, lists 11 card issuers, lists websites where attendees can check their credit score, and provides scripts for attendees to use when calling the card issuers.

124.   At a February 2022 Workshop in Las Vegas, Richard Alvarez told attendees that they can become millionaires investing with credit cards, and encouraged them to "raise [their] credit limits to the max."   Richard Alvarez also urged attendees to get multiple "investment cards" and "float the debts" from one to another.

125.   Ganadores representatives have routinely encouraged or instructed attendees to claim an income of more than $100,000 from real estate investment on their credit card applications.   In some instances, Ganadores representatives have even called card issuers on behalf of the attendees.

126.   While Defendants indicate that the purpose of the new credit is to fund attendees' future businesses, once attendees secure the credit, Ganadores representatives encourage them to use it to pay for a mentoring package.

**The Purported Benefits of the Real Estate Investment Mentoring Packages**

127.   Defendants have generally sold three tiers of mentoring packages:

a.   "VIP" – mentoring for one year, including weekly training webinars with Shemin and his team, weekly VIP-only webinar training, financing assistance on real estate deals, review of offers and contracts, Ganadores live bootcamps, Ganadores Las Vegas real estate investor summit, access to a list of hard money and private money lenders with whom Ganadores does business, the creation of two LLCs for real estate investments, and one-year access to Ganadores "special proprietary" "spectacular" real estate software;

b.   "Premium" – generally the same items as the VIP package, but for nine months, and creation of one LLC instead of two; and

36

c. "<u>Plus</u>" – six months of weekly training webinars with Shemin and his team, review of offers and contracts, a video recording of the Ganadores bootcamp, and access to the Ganadores "resource library."

128. VIP packages have generally been priced between $26,997 and $28,997, Premium between $16,997 and $18,997, and Plus at $10,997.

129. Defendants claim that the mentoring package will teach purchasers how to follow Ganadores' proven "system" for successful investing. Richard Alvarez has told workshop attendees that "this business is mathematics," and the "system" works in every country minus Cuba, Venezuela, North Korea, and Afghanistan.

130. The real estate investment workshop often includes a video stating that Shemin has thousands of "students" who have attained "total financial freedom for life" thanks to his mentoring, even though most had no prior real estate investment experience. Defendants, however, do not have thousands of purchasers who have attained "financial freedom" from real estate investment.

131. Ganadores representatives often tell attendees that if they purchase a mentoring package, Ganadores mentors will guide them and "hold their hand" to assist them with completing their estate investment deals.

132. Defendants represent that their proprietary software collects data from

37

all over the United States and allows Ganadores members to access up-to-date information about 160 million properties.   Purchasers, however, report that the software is often not up to date, and that requests for assistance with the software are ignored.

133.   Indeed, Ganadores' chief "mentor," Daniel Segovia, often instructs purchasers to use other real estate software, such as Zillow.com and Redfin.com, because they are automatically updated and contain more current information.

134.   Ganadores customers who attempt to finance real estate deals using lenders listed in the mentoring package as "vetted" by Ganadores often find that the lenders are out of business, the listed phone numbers do not work, or they have never heard of Ganadores.

135.   Listed lenders that customers were able to reach, such as hard money lender Latin Loan Capital, offered stiff loan terms that rendered the relevant potential deals unprofitable.

136.   Ganadores representatives have told workshop attendees that Ganadores would finance 100% of real estate deals by purchasers of VIP mentoring packages, and that purchasers would all complete their first real estate deals at the Ganadores "bootcamp."   Both statements are false.   Many, if not most, purchasers do not complete a real estate deal at the bootcamp, and Ganadores

neither provides nor arranges for 100% real estate deal financing for most, if any, Ganadores customers.

137.    Ganadores customers report that the mentors do not guide them and "hold their hands" to assist them with completing real estate investment deals, as Ganadores representatives routinely promise to workshop attendees.

### The Purported Benefits of the Online Store Mentoring Packages

138.    Defendants have offered at least three types of online-selling mentoring packages:

a.  "Elite" – 20 weeks of personal training with one-on-one sessions, access to lists of pre-analyzed products, access to a listing of manufacturers and distributors with whom Ganadores has contact, analysis of offers, Ganadores Online Las Vegas Summit, entrance ticket to Product Fair ASD in Las Vegas, unlimited access to Ganadores members-only website, assistance with establishing an LLC and a reseller permit, professional design of a web page for the consumer's business, products worth $1,000 in market value to upload to the consumer's store;

b.  "Executive" – 14 weeks of personal training with one-on-one sessions, access to lists of pre-analyzed products, analysis of offers, Ganadores Online Las Vegas Summit, entrance ticket to Product Fair

ASD in Las Vegas, six months of access to the Ganadores members-only website, and products worth $500 in market value to upload to the consumer's store; and

c. "Premier" – eight weeks of personal training with one-on-one sessions, analysis of offers, Ganadores Online Las Vegas Summit, entrance ticket to Product Fair ASD in Las Vegas, three months of access to the Ganadores members-only website, and products worth $300 in market value to upload to the consumer's store.

139.   Elite packages have generally cost $26,995; Executive $16,995; and Premier $9,995.   In some instances, Defendants have offered consumers narrower versions of online-selling mentoring packages for $4,900 and $7,000.

140.   As with the real estate investment mentoring packages, many consumers who purchased Ganadores' online-selling mentoring packages did not receive the services promised to them and did not make substantial income from selling online.

141.   Ganadores customers report that the online store websites Defendants set up often did not work, products often were not delivered, and Ganadores and its mentors did not respond to emails or calls for assistance.

### **Defendants Fail to Provide Disclosure and Earnings Claim Statements**

40

142.   The mentoring packages for both the real estate and online store programs are business opportunities under the Business Opportunity Rule, as they are a "commercial arrangement" in which Defendants "solicit[] a prospective purchaser to enter into a new business;" the "prospective purchaser makes a required payment" to Defendants, and Defendants "represent[] that [they] or one or more designated persons will . . . [p]rovide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services."   16 C.F.R. § 437.1 (c).

143.   As noted in Paragraphs 91-92, Defendants represent that purchasers of Ganadores real estate mentoring packages will have access to short-term renters through Airbnb.com and to wholesalereal estate purchasers through Myhousedeal.com.   They have also represented that purchasers of the Ganadores online store mentoring packages will have access to customers through Amazon.com.

144.   Defendants do not provide disclosure documents required under the Business Opportunity Rule to prospective purchasers of the Ganadores mentoring packages at least seven calendar days before signing a business opportunity contract or making a payment for the business opportunity.

145.   Defendants also have failed to disclose in writing other information

41

required by the Business Opportunity Rule, including:

    a. the seller's identifying information, including name, business address, and telephone number;

    b. whether the seller makes earnings claims, along with an "Earnings Claims Statement" required by the Business Opportunity Rule;

    c. a list of civil, criminal, and FTC actions within the last 10 years;

    d. the seller's cancellation or refund policy; and

    e. a list of purchasers and contact information of individuals who purchased the business opportunity within the last three years.

146.   Although Defendants have routinely made claims to prospective purchasers about likely earnings, they have failed to provide prospective purchasers with an Earnings Claim statement, as required by the Business Opportunity Rule, which includes the beginning and ending dates when the represented earnings were achieved, and the number and percentage of all persons who purchased the business opportunity and achieved the stated level of earnings. Defendants have also failed to disclose written substantiation of their earnings claims as required under the Business Opportunity Rule.   When Defendants do provide some of the information required by the Business Opportunity Rule, they often provide the information in English, even though the advertisements and sales

presentations are in Spanish.

### Failure to Properly Inform Purchasers of Their Right to Cancel

147.   Defendants provide purchase agreements to consumers who pay for a spot at their workshop or buy a mentoring package.   The back of the agreement includes information about the consumer's right to cancel the sale.   This information is frequently only in English, even though Defendants' target audience is Spanish-speaking consumers, the seminars and workshops are conducted almost entirely in Spanish, , and Defendants know that many of the attendees are unable to read or write in English.

148.   Moreover, Defendants do not proactively inform purchasers of their right to cancel, or provide them with copies of a cancellation form titled either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," as specifically required by the Cooling Off Rule.   16 C.F.R. Part 429(b) and (e).

### Form Settlement Provisions That Prohibit Consumers From Pursuing Or Filing Complaints with Law Enforcers and Other Entities

149.   Some dissatisfied customers seek refunds from Defendants. Defendants often use the terms of the workshop or mentoring purchase agreements, including the cancellation policy, to deny consumers' refund requests and to combat consumer Better Business Bureau and State Attorney General complaints and chargebacks.

43

150.    Those who succeed in obtaining some money back typically receive only a partial refund, and often only if they sign a standard form agreement that prohibits them from communicating with others about their experience with Ganadores.   The agreement often bars the customers from posting reviews about Ganadores and requires them to delete any negative comments they have already posted.

151.    The refund agreements contain standardized terms imposed on Ganadores customers without a meaningful opportunity for them to negotiate those terms.   The agreements commonly include the following language in English:

> Likewise, the signer hereby certifies that he will not initiate any defamation of "Ganadores Inversiones Bienes Raices (Vision Online, Inc.)" by any social, electronic, or personal means.   If so, this action will constitute legal action by The Company for breach of this, in which payment for damages caused and payment for legal costs incurred will be required.

152.    Defendants often require, as a condition for any refund, that the customers sign a document attesting that they have (1) removed all online negative posts about their experience with Ganadores, (2) forfeited the right to place any future negative feedback, and (3) reported to any agency with which they had filed a complaint about Ganadores that the complaint has been satisfactorily resolved.

153.    Defendants have threatened potential legal actions against dissatisfied customers who sought refunds.   For example, in June 2022, Richard Alvarez

texted a customer seeking a refund that any future communication to Ganadores would be directed to Ganadores' legal department.

154.   Another dissatisfied customer disputed a credit card charge and filed complaints with the Better Business Bureau and the FTC in August 2022. Defendants stated to the customer that a "legal defamation action" would be filed against him.   Ganadores' chief "mentor," Daniel Segovia, told the customer that others had tried to dispute Ganadores charges, but no one succeeded.

155.   Some Ganadores customers have been reluctant to speak with law enforcers, including FTC staff, about their experience with Ganadores because of the gag provisions in their refund agreements.

### Defendants Employ Deceptive and Untrue Testimonials and Reviews

156.   Defendants post positive endorsements on online review forums, including Google Reviews and TrustPilot.com, about Ganadores that do not disclose the reviewer's association with Ganadores.   Examples of "five-star" TrustPilot reviews posted by Ganadores owners, officers, or employees, in 2021 and 2022, without disclosing the reviewer's affiliation include (translated from Spanish):

    a.   Richard Alvarez stating: "Truly Committed to Student Success!"

    b.   Ganadores employee Tatiana Bello stating:

Thanks to Real Estate Investment Winners
I am tremendously grateful for all the support that Richard Álvarez and Winners Real Estate Investments have given me in all this time that I have been part of the Winners community.   The trainings they offer are top quality.   The structure, its organization as a company, the support for all of us as students has always been done with excellence.   Today I am a Real Estate investor, I already have my own investments . . . and I'm going for more!
Thanks for all the support.   I thank you from the bottom of my heart.

    c. Ganadores employee Gustavo Acosta stating: "Excellent Excellent. They accompany us at every stage of the process until we get the deal."

157.   Similar "five-star" Google reviews from the same period include:

    a. Defendant Chamberlain stating: "The highest in quality financial education."

    b. Ganadores employee Von Marie Cardoso stating: "They are experts in real estate.   Communication, their constant support and being able to learn in a practical way what they tell us, have been key points for my success.   Without a doubt an incredible business opportunity !!"

## **VIOLATIONS OF THE FTC ACT**

158.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

159.   Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot

46

reasonably avoid themselves and that are not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

160.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I – False or Unsubstantiated Earnings Claims

161.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Ganadores business opportunities and training and mentoring packages, Defendants have represented directly or indirectly, expressly or by implication, that purchasers of the Ganadores business opportunities and training and mentoring packages are likely to earn substantial income.

162.    The representations set forth in Paragraph 161 are false, misleading, or were not substantiated at the time the representations were made.

163.    Therefore, Defendants' representations as set forth in Paragraph 161 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II –Misrepresentations Regarding Ganadores Workshops

164.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Ganadores real estate investment and

online-selling workshops, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who purchase a spot in and attend a Ganadores workshop will:

    a.  Learn everything they need to know at the workshop to make substantial income through real estate investment or online selling; or

    b.  Complete their first real estate deal during or immediately after the real estate investment workshop.

165.   In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 164, consumers who purchased a spot in and attended a Ganadores workshop did not learn everything they need to know at the workshop to make substantial income through real estate investment or online-selling products or did not complete their first real estate deal during or immediately after the workshop.

166.   The representations set forth in Paragraph 164 are false, misleading, or were not substantiated at the time the representations were made.

167.   Therefore, the Defendants' representations as set forth in Paragraph 163 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count III – Misrepresentations Regarding
Ganadores Mentoring Packages and Other Services**

168.   In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their real estate investment and online selling related products, Defendants have represented, directly or indirectly, expressly or by implication, that:

a.   The Ganadores mentoring packages:

(1) are only offered for a limited time;

(2) can only be purchased at the workshop;

(3) are only offered to selected consumers vetted by Ganadores to ensure they will be successful;

(4) provide purchasers of the VIP mentoring packages with 100% funding for real estate deals; or

(5) provide purchasers with personalized assistance from experts or mentors who will walk consumers through completing real estate deals, including helping them find offers, drafting contracts, and obtaining funding; or

b.   Consumers who pay for and attend the Ganadores real estate bootcamp will complete a profitable real estate deal at the bootcamp.

49

169. The representations set forth in Paragraph 168 are false or misleading or were not substantiated at the time the representations were made.

170. Therefore, Defendants' representations as set forth in Paragraph 168 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count IV – Misrepresentations Regarding Defendants' Need for Consumers' Financial Information

171. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Ganadores real estate investment and online selling related products, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants need detailed financial information from consumers to determine if the consumers qualify for a Ganadores mentoring package.

172. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of Ganadores real estate mentoring packages, Defendants have represented, directly or indirectly, expressly or by implication, that consumers should increase their credit card limits and apply for additional credit cards to finance real estate deals.

173. In truth and in fact, in numerous instances in which the Defendants have made the representations set forth in Paragraphs 171-172, Defendants (1) do

50

not use the financial information they obtain from consumers to determine if the consumers qualify for a Ganadores mentoring package; and (2) encourage consumers to increase their existing credit card limits and apply for additional credit cards to allow consumers to pay for a Ganadores mentoring packages, not so that consumers can finance real estate deals.

174.   Therefore, Defendants' representations as set forth in Paragraphs 171-172 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count V – Deceptive Reviews and Testimonials

175.   Through the means described in Paragraphs 156-157, Defendants have represented, directly or indirectly, expressly or by implication, that positive reviews of, and testimonials about, Ganadores and its products have been testimonials of impartial customers who used Ganadores' products.

176.   In truth and in fact, in numerous such instances, Defendants have failed to disclose that the positive reviews of, and testimonials about, Ganadores and its products in fact have been from Ganadores owners, officers, employees, or agents.   This fact would be material to consumers in evaluating the positive reviews of, and testimonials, about Ganadores' products in connection with a purchase or use decision.

177.   Defendants' failure to disclose adequately the material information described in Paragraph 176, in light of the representation described in Paragraph 175, constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## Count VI – Unfairly Providing Consumers Sale-Related Documents In A Language In Which Consumers Are Not Fluent

178.   In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Ganadores real estate mentoring packages, Defendants have provided purchasers with key documents, including purchase agreements that outline the cancellation policy and include other material terms of purchase, that are in English, even when Defendants' advertisements and sales presentation were in Spanish and many purchasers did not speak or read English fluently, if at all, and therefore could not read and understand the documents.

179.   Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

180.   Therefore, Defendants' acts or practices as set forth in Paragraph 178 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE BUSINESS OPPORTUNITY RULE

181.   The amended Business Opportunity Rule, 16 C.F.R. Part 437, which was extended in scope to cover certain work-at-home opportunities, became effective on March 1, 2012, and has since that date remained in full force and effect.

182.   Defendants are "sellers" who, as described in Paragraphs 80-82, 91-93, and 143, have sold or offered to sell "business opportunities" as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(c) and (q).   Under the Business Opportunity Rule, a "seller" is a person who offers for sale or sells a business opportunity.   16 C.F.R. § 437.1(q).   Under the Rule, a "business opportunity" means a "commercial arrangement" in which a "seller solicits a prospective purchaser to enter into a new business;" the "prospective purchaser makes a required payment;" and the "seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will … [p]rovide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services." 16 C.F.R. 437.1(c).

183.   Among other things, the Business Opportunity Rule requires sellers to provide prospective purchasers with a disclosure document in the form and using

53

the language set forth in the Business Opportunity Rule and its Appendix A, and any required attachments.   In the disclosure document, the seller must disclose to prospective purchasers five categories of information, including basic identifying information about the seller, any earnings claims the seller makes, the seller's litigation history, any cancellation and refund policy the seller offers, and contact information of prior purchasers.   16 C.F.R. § 437.3(a)(1)-(5).   Furthermore, this information must be disclosed at least seven (7) days before the prospective purchaser signs a contract or makes a payment.   16 C.F.R. § 437.2.   The pre-sale disclosure of this information enables a prospective purchaser to contact prior purchasers and take other steps to assess the potential risks involved in the purchase of the business opportunity.

184.   Defendants, as described in Paragraphs 104-117, have made earnings claims in connection with the sale of their business opportunities, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(f).   Under the Business Opportunity Rule, an "earnings claim" means "any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits."   16 C.F.R. § 437.1(f).

185.   The Business Opportunity Rule prohibits sellers from making earnings claims unless the seller:   (1) has a reasonable basis for the claim at the time it is made; (2) has in its possession written materials to substantiate the claim at the time it is made; (3) furnishes an Earnings Claim statement to prospective purchasers in conjunction with the disclosure document, containing, among other things, information regarding the time frame captured by the earnings claim, the characteristics of the purchasers, and the number and percentage of all persons who purchased the business opportunity within the time frame who achieved at least the stated level of earnings; and (4) makes written substantiation of the earnings claim available to any prospective purchaser who requests it.   16 C.F.R. § 437.4(a).

186.   The Business Opportunity Rule also requires that if the seller conducts the offer for sale, sale, or promotion of a business opportunity in Spanish, the seller must provide the disclosure document required by Section 437.3(a) in the form and language set forth in appendix B to the Business Opportunity Rule, and the disclosures required by Sections 437.3(a) and 437.4 of the Business Opportunity Rule must be made in Spanish.   16 C.F.R. § 437.5.

187.   Defendants, as described in Paragraphs 78 and 110, have disseminated industry financial, earnings, or performance information in connection with the offering for sale, sale, or promotion of a business opportunity.

188.    The Business Opportunity Rule prohibits sellers from disseminating industry financial, earnings, or performance information unless the seller has written substantiation demonstrating that the information reflects, or does not exceed, the typical or ordinary financial earnings, or performance experience of purchasers of the business opportunity being offered for sale.   16 C.F.R. § 437.4(c).

189.    Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Business Opportunity Rule constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count VII— Misrepresentations Regarding Income or Profits

190.    In numerous instances, Defendants have misrepresented the amount of sales, or gross or net income or profits a prospective purchaser may earn or that prior purchasers have earned in connection with the offering for sale, sale, or promotion of a Ganadores business opportunity.

191.    Defendants' acts and practices, as described in Paragraph 190, violate the Business Opportunity Rule, 16 C.F.R. § 437.6(d) and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

56

## Counts VIII—Earnings Claims to Prospective Purchasers Violations

192.   In numerous instances, Defendants have made earnings claims to prospective purchasers in connection with the offering for sale, sale, or promotion of a Ganadores business opportunity while, among other things:   (1) lacking a reasonable basis for the earnings claim at the time it was made; (2) lacking written substantiation for the earnings claim at the time it was made; or (3) failing to provide an earnings claim statement to the prospective purchaser, as required by the Business Opportunity Rule.

193.   Defendants' acts and practices, as described in Paragraph 192, violate the Business Opportunity Rule, 16 C.F.R. § 437.4(a) and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IX — Industry Financial, Earnings, or Performance Information Violations

194.   In numerous instances, Defendants have disseminated industry financial, earnings, or performance information in connection with the offering for sale, sale, or promotion of a Ganadores business opportunity while lacking written substantiation demonstrating that the information reflects, or does not exceed, the typical or ordinary financial earnings, or performance experience, of purchasers of the business opportunity being offered for sale.

57

195. Defendants' acts and practices, as described in Paragraph 194, violate the Business Opportunity Rule, 16 C.F.R. § 437.4(c) and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count X — Disclosure Document Violations

196. In numerous instances in connection with the offer for sale, sale, or promotion of Ganadores business opportunities, Defendants have:

    a.    failed to furnish prospective purchasers with the disclosure document and attachments required by the Business Opportunity Rule, within the time period prescribed by the Rule; or

    b.    in instances where the sales were conducted in Spanish, failed to provide purchasers with the disclosure document required by Sections 437.3(a) and 437.4 of the Business Opportunity Rule in Spanish.

197. Defendants' acts and practices, as described in Paragraph 196, violate the Business Opportunity Rule, 16 C.F.R. §§ 437.2, 437.3(a), 437.4, and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE COOLING-OFF RULE

198.   The Cooling-Off Rule, 16 C.F.R. Part 429, gives buyers of certain goods and services three business days to cancel purchases of $25 or more when the sale takes place at the buyer's home, or $130 or more when the sale takes place at any location other than the Seller's place of business (e.g., at facilities rented on a temporary or short-term basis, such as hotel or motel rooms, convention centers, or fairgrounds and restaurants).   16 C.F.R. § 429.0(a), 429.1.

199.   The Cooling-Off Rule requires the seller to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language as that principally used in the oral sales presentation, and which must contain a statement summarizing the buyer's right to cancel within three business days. 16 C.F.R. § 429.1(a).

200.   The Cooling-Off Rule also requires the seller to inform buyers about cancellation rights at the time of the sale by giving the buyer two copies of a cancellation form (one for the buyer to keep and one for the buyer to send to the seller in the event the buyer chooses to cancel).   The Cooling-Off Rule further requires the cancellation form be captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION" and sets forth the language that must be contained in the cancellation notice. 16 C.F.R. § 429.1(b) and (c).

201.   The Cooling-Off Rule prohibits sellers from including in any contract or receipt a waiver of the rights to which the buyer is entitled under the Cooling-Off Rule, including specifically the buyer's right to cancel the sale in accordance with the Cooling-Off Rule. 16 C.F.R. § 429.1(d).

202.   The Cooling-Off Rule also requires that, at the time the buyer signs the contract or purchases the goods or services, the seller orally inform the buyer of the buyer's right to cancel. 16 C.F.R. § 429.1(e).

203.   The Cooling-Off Rule prohibits the seller from misrepresenting in any manner the buyer's right to cancel. 16 C.F.R. § 429.1(f).

204.   The Cooling-Off Rule also requires that the seller must honor any valid notice of cancellation by a buyer and within 10 business days after receipt of such valid notice refund to the buyer all payments made under the contract. 16 C.F.R. § 429.1(g).

205.   Pursuant to Section 18 of the FTC Act, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. § 429.1, a violation of the Cooling-Off Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

206.   Defendants are "sellers" as that term is defined in Section 429.0(c) of the Cooling-Off Rule and have been engaged in sales of "consumer goods or

60

services," as those terms are defined in Section 429.0(a) and (b) of the Cooling-Off Rule at locations other than their place of business, including at facilities rented on a temporary or short-term basis, such as hotel or motel rooms and convention centers.

### Count XI -- Violation of the Cooling-Off Rule

207.   In numerous instances in connection with Defendants' sale of consumer goods or services at locations other than Defendants' place of business, including at facilities rented on a temporary or short-term basis, such as hotel or motel rooms and convention centers, Defendants have:

    a.  Failed to furnish buyers with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language as that principally used in the oral sales presentation, 16 C.F.R. § 429.1(a);

    b.  Failed to furnish buyers with a "NOTICE OF CANCELLATION" or "NOTICE OF RIGHT TO CANCEL" in duplicate, that buyers can use to cancel the transaction, 16 C.F.R. § 429.1(b) and (c); or

    c.  Failed to orally inform buyers of their right to cancel the transaction, 16 C.F.R. § 429.1(e).

208.   Defendants' practices as alleged in Paragraph 207 violate the Cooling-Off Rule, 16 C.F.R. § 429.1, and therefore are unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATION OF THE CONSUMER REVIEW FAIRNESS ACT

209.   The Consumer Review Fairness Act of 2016 ("CRFA"), Pub. L. No. 114-258, 15 U.S.C. § 45b, was enacted on December 14, 2016.   As of March 14, 2017, Section 2(b) of the CRFA renders void, and Section 2(c) of the CRFA prohibits the offering of, provisions in form contracts that: prohibit or restrict individual consumers' ability to communicate reviews, performance assessments, and similar analyses about a seller's goods, services, or conduct; or that impose a penalty or fee against individual consumers who engage in such communications. 15 U.S.C. §§ 45b(a)(2), 45b(b)(1), and 45b(c).

210.   The Commission is authorized to enforce Section 2(c) of the CRFA in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the FTC Act, 15 U.S.C. §§ 41-58, were incorporated into and made a part of the CRFA. 15 U.S.C. § 45b(d)(2)(A).   The Commission's enforcement authority under the CRFA applies to contracts in effect on or after December 14, 2017. 15 U.S.C. § 45b(i)(2).

211.   Pursuant to 15 U.S.C. § 45b(d)(1), a violation of 15 U.S.C. § 45b(c) shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B).

### Count XII -- Use of Invalid Contracts that Impede Consumer Reviews

212.   As described in Paragraphs 149-51, Defendants have offered, in the course of selling goods or services, form contracts, as that term is defined in 15 U.S.C. § 45b(a)(3), that contained a provision made void by 15 U.S.C. § 45b(b)(1).

213.   Therefore, the acts and practices set forth in Paragraphs 149-51 violated Section 2(c) of the CRFA, 15 U.S.C. § 45b(c).

### CONSUMER INJURY

214.   Consumers have suffered tens of millions of dollars of injury, are suffering, and will continue to suffer substantial injury as a result of the Defendants' violations of the FTC Act, the Business Opportunity Rule, the Cooling Off Rule, and CRFA.   Absent injunctive relief by the Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act, the Business Opportunity Rule, the Cooling Off Rule, and CRFA by Defendants;

B.      Grant preliminary injunctive and ancillary relief;

C.      Award monetary and other relief in accordance with Section 13(b) and Section 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b;

D.      Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated:   June 5, 2023

Virginia G. Rosa, Attorney
J. Ronald Brooke, Jr., Attorney
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580
202-326-3068 (Rosa)
202-326-3484 (Brooke)
vrosa@ftc.gov
jbrooke@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

64