UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

v.                                              **Case No: 6:23-cv-1041-WWB-DCI**

**VISION ONLINE, INC., GANADORES IBR, INC., VISION ONLINE DIGITAL, LLC, VISION ONLINE ENGLISH, LLC, VISION ONLINE LATINO, LLC, RICHARD ALVAREZ, SARA ALVAREZ, ROBERT SHEMIN and BRYCE CHAMBERLAIN,**

        **Defendants.**

**ORDER**

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Defendants Richard and Sara Alvarez's Motion for Attorney Fees and Corporate Defendants' Costs (Doc. 80)** |
| **FILED:** | **September 29, 2023** |

**THEREON** it is **ORDERED** that the motion is **DENIED without prejudice**.

Pending before the Court is Defendants Richard and Sara Alvarez's (the Individual Defendants) request for an order authorizing the payment of attorney fees and the costs incurred in their representation and in the representation of Vision Online, Inc.; Ganadores IBR, Inc.; Vision Online Digital, LLC; Vision Online English, LLC; and Vision Online Latino, LLC (the Corporate Defendants). Doc. 80 (the Motion). Receiver Mark Bernet and the Federal Trade Commission

(FTC) have filed their respective Responses in Opposition to the Motion. Docs. 91, 92. The Individual Defendants have filed an Amended Reply. Doc. 99 (the Amended Reply).

For the reasons stated herein, the Court finds that the Motion is due to be denied without prejudice.

## I. Background and Procedural History

The FTC initiated this case by filing a Complaint for Permanent Injunction, Monetary Relief, and Other Relief. Doc. 1. The FTC also moved for a temporary restraining order "to immediately halt a deceptive scheme targeting Spanish-speaking consumers across the country." Doc. 3. At the same time, the FTC filed an *Ex Parte* Request for Monitor. Doc. 5. On June 7, 2023, the Court granted the FTC's motions, issued a temporary restraining order (the TRO), and appointed Bernet as Monitor. Doc. 11.

As part of the TRO, the Court froze the Individual Defendants' assets and placed Bernet as the Monitor over the Corporate Defendants' assets. Doc. 11 at 11-12. Specifically, the Court froze (1) "all assets of Individual Defendants as of the time [the TRO] is entered; and (2) assets obtained by Individual Defendants after [the TRO] is entered if those assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order." *Id*. at 11, 12. The Court also temporarily enjoined the Defendants from, with exception, "[d]isbursing, spending, liquidating, or assigning any Corporate Defendant's assets in the amount of $5,000 or greater, in any manner, directly or indirectly, without the Monitor's prior approval[.]" *Id*. at 10.

The Individual Defendants state that on June 9, 2023, after the Court entered the TRO, the Corporate and Individual Defendants hired Cozen O'Connor as counsel. Doc. 80 at 5. The Individual Defendants contend that "[Cozen O'Connor] promptly began analyzing the TRO and its attachments—along with the FTC's other filings—to fulfill Court-ordered obligations on an expedited basis." Doc. 80 at 5-6.

The FTC, the Corporate Defendants, and the Alvarezes eventually reached an agreement and filed a Joint Motion for Preliminary Injunction. Doc. 47.[1] The Court granted the request and entered the Preliminary Injunction to remain in full force and effect until the entry of final judgment adjudicating all the claims and all the parties' rights and liabilities unless sooner modified or dissolved. Doc. 52 at 43. The Court converted the Corporate Defendants into "Receivership Entities" and appointed Bernet, the Monitor, as receiver (the Receiver) to "prevent the loss of all assets of the Receivership Entities and perform all acts necessary or advisable to preserve the value of those assets." *Id*. at 7, 21-22. By Order dated November 20, 2023, the Court granted the Joint Motions to Stay Deadlines and stayed the case for 60 days as to Defendant Chamberlain, the Corporate Defendants, and the Individual Defendants. Doc. 109.[2]

The Individual Defendants now request an order from the Court authorizing payment to Cozen O'Connor in the amounts of (1) $175,749.20 from the receivership estate for attorney fees and costs incurred in counsel's representation of the Corporate Defendants "following entry of the [TRO] until entry of the [Preliminary Injunction] on July 18, 2023"; and (2) $63,855.20 from the Individual Defendants' frozen assets for attorney fees and costs counsel incurred in the Individual Defendants' representation following entry of the TRO through August 28, 2023. Doc. 80 at 1-2. The Individual Defendants state that "no attorneys' fees or costs have accrued for counsel's work

---

[1] The FTC and Defendant Bryce Chamberlain also submitted a Joint Application for Entry of Stipulated Preliminary Injunction Order as to Chamberlain. Doc. 31. Separately, Defendant Robert Shemin and the FTC entered a stipulation to extend his TRO. Doc. 38. The Court granted the extension and found that Shemin's TRO would expire at 11:59 p.m. Eastern Time on August 4, 2023, unless the order was extended. Doc. 52.

[2] The Court also amended the Preliminary Injunction to allow the release of $15,000 in frozen funds from Chamberlain's Equity Trust Company retirement account ending and the transfer of $35,000 from Chamberlain's Equity Trust Company retirement account to his frozen savings account to facilitate a possible settlement in this case. *Id*.

on behalf of Corporate Defendants since July 18, 2023, the date the [Preliminary Injunction] was entered." *Id*. at 22.

## II.  Discussion

The Individual Defendants contend that courts may use discretion to modify an injunction to authorize the use of frozen assets for the payment of reasonable attorney fees and costs and to authorize payment from a receivership estate for the same purpose. Doc. 80 at 9-10. The problem is that the Individual Defendants focus solely on the reasonableness of the requested fees and fail to address why the Court should authorize the payment in the first place. As such, the Motion is insufficient.

A district court may, through its proper use of equitable powers, enter an asset freeze on a party's assets. *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). "As a corollary to that authority, a district court may also release or lower the amount of assets frozen." *FTC v. Roca Labs, Inc.*, 2017 WL 11002307 (M.D. Fla. Apr. 7, 2017) (citing *FTC v. RCA Credit Servs., LLC*, 2008 WL 5428039, at *1 (M.D. Fla. Dec. 31, 2008); *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001)). Courts may, therefore, unfreeze assets to allow for the payment of attorney fees. *See id*. ("A court has discretion to decide whether to unfreeze assets to pay attorney fees.") (citing *CFTC v. Noble Metals Intl'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995)).

In doing so, a court will examine the reasonableness of the requested attorney's hourly rate and hours expended. *See SEC v. Davidson*, 2022 WL 2349981, at *4 (M.D. Fla. May 31, 2022), *report and recommendation adopted by*, 2022 WL 2318052 (M.D. Fla. June 6, 2022). But before this examination should occur, the movant must establish entitlement to the payment from the frozen funds and the receivership estate. *See Davidson*, 2022 WL 2349981, at *4 (examining authority and entitlement to modify an asset freeze prior to reaching the issue of the reasonableness

of the requested fees). And "[w]hile courts have granted and upheld the unfreezing of assets to pay for attorneys' fees, courts look to the facts of the case to determine whether to exercise discretion." *Mila v. Big Steve's Deli LLC*, 2021 WL 2784553, at *3 (S.D. Fla. Apr. 9, 2021), *report and recommendation adopted by*, 2021 WL 2783877 (S.D. Fla. July 2, 2021).

For example, in determining whether to permit payment, courts will consider whether the frozen assets are adequate to cover the amount needed to compensate injured parties. Specifically, "courts have considered whether the frozen assets are enough to redress the injuries caused to the injured party and, when the funds are insufficient, the court may deny the request to unfreeze the assets." *Id*. (citing *Commodity Futures Trading Comm. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995)). "Moreover, while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *FTC v. USA Financial, LLC*, 2008 WL 3165930, at *3 (M.D. Fla. July 21, 2008) (citing *S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993)); *FTC v. RCA Credit Services, LLC*, 2008 WL 5428039 (M.D. Fla. Dec. 31, 2008) (same). Also, akin to the issue of redress, is the consideration of "both the likelihood of success on the merits of the claims brought by the governmental agency bringing the enforcement action *and* balanc[ing] the equities." *SEC v. Humphries*, 2022 WL 4483143, at *3 (D. Nev. Sept. 27, 2022) (citing *FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999) (emphasis in the original)).

Further, there is the question of creditor rights when deciding to unfreeze assets. At least with respect to the receivership estate, the Receiver argues that "[p]aying the Cozen O'Connor firm now, while there remain unliquidated but non-contingent tax claims owed by Vision Online, would run afoul of the Federal Priority Statute and potentially subject the Receiver to personal liability." *Id*. at 8-9. It is, therefore, the Receiver's position that "unless and until it becomes clear

that the administrative claims, federal tax claims, and claims of consumer victims are paid in full, the Court should not address requests for payment by other pre-receivership creditors." *Id*. Similar to the redressability issue, it stands to reason that the Court should consider Cozen O'Connor's ability to "cut in line" as a creditor at this juncture of the case.

Here, the Individual Defendants offer no factual basis for entitlement to the award and instead spend their entire analysis on the reasonableness of the fee. It is too soon, however, for the Court to examine hourly rates and time expended when it is not convinced that it should exercise discretion to even authorize payment. And the Court has serious concerns given the issues of redress and potential creditors. Also, absent from the Motion is any discussion of the pertinent sections of the Preliminary Injunction at issue—the language of the Injunction itself seems a good place to start given the Receiver's position that the payment of pre-receivership fees that have "little benefit to the receivership estate" do not qualify. *See* Doc. 91 at 7.

The Court notes that the Individual Defendants briefly address redressability and creditor priority in the Amended Reply. Doc. 99 at 55. First, courts "ordinarily do not consider arguments raised for the first time on reply." *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015). Second, the Amended Reply contains conclusory arguments and little legal support.

Finally, while the Individual Defendants recently represented to the Court that they will not withdraw the Motion even though they filed a Joint Application for Permanent Injunction and Monetary Judgment (Doc. 114 at 2), the subsequent settlement raises a question of whether the briefing on these issues is up to date. The resolution of the claims and a resulting injunction and judgment seems relevant to the Court's decision to unfreeze assets, especially in light of the outstanding issues surrounding the ability to redress injury, the likelihood of success on the merits, and creditor rights.

### III. Conclusion

Based on the foregoing, it is **ORDERED** that:

1. the Individual Defendants' Motion (Doc. 80) is **DENIED without prejudice**; and

2. to the extent that the Individual Defendants still seek the relief set forth in the Motion, they must file a renewed motion **on or before April 1, 2024**.

**ORDERED** in Orlando, Florida on March 11, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE