**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.                                                             Case No.: 6:23-cv-1041-WWB-DCI

VISION ONLINE, INC., GANADORES
IBR, INC., VISION ONLINE DIGITAL,
LLC, VISION ONLINE ENGLISH, LLC,
VISION ONLINE LATINO, LLC,
RICHARD ALVAREZ, SARA ALVAREZ,
ROBERT SHEMIN and BRYCE
CHAMBERLAIN,

        Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on the Renewed Joint Motion for Entry of Proposed Stipulated Orders for Permanent Injunction and Monetary Judgment as to the Corporate Defendants, Alvarez Defendants and Defendant Chamberlain (Doc. 159). Therein, the Federal Trade Commission ("**FTC**") and Defendants Vision Online, Inc., Ganadores IBR, Inc., Vision Online Digital, LLC, Vision Online English, LLC, Vision Online Latino, LLC, Richard Alvarez, Sara Alvarez, and Bryce Chamberlain (collectively, "**Settling Defendants**") request the entry of a stipulated order of permanent injunction and monetary judgment pursuant to 15 U.S.C. §§ 53(b) and 57b and ask the Court to retain jurisdiction to enforce the same.

Pursuant to § 53(b), "in proper cases the Commission may seek, and *after proper proof*, the court may issue, a permanent injunction." (emphasis added). "It is well-settled that 'permanent injunctive relief is appropriate if the defendant's past conduct indicates

that there is a reasonable likelihood of further violations in the future.'" *Fed. Trade Comm'n v. Fleetcor Techs., Inc.*, 620 F. Supp. 3d 1268, 1344 (N.D. Ga. 2022) (quoting *Fed. Trade Comm'n v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011)).  Having considered the relevant factors and the arguments and evidence presented by the FTC, the Court finds that the FTC has presented sufficient evidence of a likelihood of future violations by the Settling Defendants to warrant the entry of permanent injunctive relief in this case.  *See Fleetcor Techs.*, 620 F. Supp. 3d at 1344–46.  As to the request for monetary judgment, the Court also finds the requested relief is proper under § 57b.  Accordingly, these requests will be granted.

However, to the extent the FTC seeks the appointment of a receiver over the related entities, the Court is not convinced that the FTC has established that such relief is proper.  While there is no question that the Court can appoint a receiver under § 57b, *see Fed. Trade Comm'n v. Simple Health Plans LLC*, 58 F.4th 1322, 1329–30 (11th Cir. 2023), the FTC has failed to cite any legal authority in which a receivership was granted over non-party entities under the statutes at issue in this case or in a similar case under the Court's inherent authority.  Nor has the FTC stated that the entities that would be subject to the expanded receivership have been notified or given an opportunity to be heard regarding their liquidation, as requested in the proposed order.  The FTC also fails to provide adequate proof that the requested relief is necessary to safeguard the assets or that less drastic remedies would not be sufficient.  Given the extraordinary nature of the relief requested, the Court finds that the FTC has fallen short of establishing its entitlement thereto.  Thus, the request will be denied as to all non-party entities.

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The Renewed Joint Motion for Entry of Proposed Stipulated Orders for Permanent Injunction and Monetary Judgment as to the Corporate Defendants, Alvarez Defendants and Defendant Chamberlain (Doc. 159) is **GRANTED in part** as set forth herein and **DENIED** in all other respects.

2. The claims against Defendants Vision Online, Inc., Ganadores IBR, Inc., Vision Online Digital, LLC, Vision Online English, LLC, Vision Online Latino, LLC, Richard Alvarez, Sara Alvarez, and Bryce Chamberlain are **DISMISSED with prejudice** pursuant to this Order and Permanent Injunction.

3. The Clerk is directed to lift the stay and administrative closure of this case, terminate Vision Online, Inc., Ganadores IBR, Inc., Vision Online Digital, LLC, Vision Online English, LLC, Vision Online Latino, LLC, Richard Alvarez, Sara Alvarez, and Bryce Chamberlain as Defendants in this matter, and amend the case style accordingly.

4. This Court makes the following findings:

   a. This Court possesses jurisdiction over the parties and subject matter of this cause.

   b. The parties affected by this Order and Permanent Injunction consent to this Permanent Injunction's entry and final judgment to resolve all matters in dispute between them.

5. The following Permanent Injunction is entered:

## PERMANENT INJUNCTION

**I.    DEFINITIONS**

For the purpose of this Permanent Injunction, the following definitions shall apply:

A.  "**Alvarez Defendants**" means Richard Alvarez and Sara Alvarez, individually, collectively, or in any combination.

B.  "**Business Opportunity**" means a commercial arrangement in which:

1.  A Seller solicits a prospective Purchaser to enter into a new business; and

2.  The prospective Purchaser makes a required payment; and

3.  The Seller, expressly or by implication, orally or in writing, represents that the Seller or one or more Designated Persons will:

    a.  Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the Purchaser; or

    b.  Provide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the Purchaser's goods or services; or

    c.  Buy back any or all of the goods or services that the Purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including, but not limited to, providing payment for such services as, for example, stuffing envelopes from the Purchaser's home.

C.  "**Corporate Defendants**" means Vision Online, Inc., Ganadores IBR, Inc.,

Vision Online Digital, LLC, Vision Online English, LLC, Vision Online Latino, LLC, and each of their subsidiaries, affiliates, successors, and assigns.

D. "**Defendants**" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

E. "**Designated Person**" means any person, other than the Seller, whose goods or services the Seller suggests, recommends, or requires that the Purchaser use in establishing or operating a new business.

F. "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate Document within the meaning of the term.

G. "**Earnings Claim(s)**" means any representation, expressly or by implication, about income, revenues, financial gains, percentage gains, profit, net profit, gross

profit, or return on investment.  Earnings Claims include, but are not limited to: (a) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; (b) any statements from which a prospective consumer can reasonably infer that he or she will earn a minimum level of income (e.g., "earn enough money to buy a Porsche," "earn a six-figure income," or "earn your investment back within one year"); (c) references to earning sufficient income to enable a prospective consumer to quit one's job, no longer work, or live off income from the good or service sold; (d) any statements or claims regarding income made by representatives, endorsers, or instructors, including any reference to the aforementioned individuals making sufficient income to purchase a home, cars, boats, vacations, or travel; and (e) any representation of how much money a consumer could or would earn.

H. "**eCommerce Coaching Program**" means any product or service, including any program or plan, including those that are Business Opportunities, that is represented, expressly or by implication, to coach, train, or teach a consumer or a Purchaser how to make money by establishing, operating, or improving an online store.  This definition does not include books on eCommerce, in any form.

I. "**General Media**" means all print, electronic, Internet, social networking, radio, and other media outlets.

J. "**Individual Defendant(s)**" means Richard Alvarez, Sara Alvarez, Robert Shemin, and Bryce Chamberlain, individually, collectively, or in any combination.

K. "**Investment Opportunity**" means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

L. "**Person**" means any natural Person or any entity, corporation, partnership, or association of persons.

M. "**Pictorial**" includes pictures, photographs, video, illustrations, and symbols.

N. "**Prohibited Agreement Provision**" means a contract provision used in the course of selling or leasing goods or services that:

    1. prohibits or restricts the ability of a Person who is a party to the contract to engage in a Relevant Communication;

    2. imposes a penalty or fee against a Person who is a party to the contract for engaging in a Relevant Communication; or

    3. transfers, or requires a Person who is a party to the contract to transfer, to any other Person any intellectual property rights in a Relevant Communication, with the exception of a non-exclusive license to lawfully use a Relevant Communication about a Defendant's goods, services, or conduct.

O. "**Provide locations, outlets, accounts, or customers**" means furnishing the prospective Purchaser with existing or potential locations, outlets, accounts, or customers; requiring, recommending, or suggesting one or more locators or lead generating companies; collecting a fee on behalf of one or more locators or lead generating companies; offering to furnish a list of locations; or otherwise

assisting the prospective Purchaser in obtaining his or her own locations, outlets, accounts, or customers, provided, however, that advertising and general advice about business development and training shall not be considered as "providing locations, outlets, accounts, or customers."

P.  "**Purchaser**" means a Person who buys a Business Opportunity or Investment Opportunity.

Q.  "**Real Estate Coaching Program**" means any product or service, including any program or plan, including those that are Business Opportunities, that is represented, expressly or by implication, to train or teach a consumer how to make money through investing in or buying and selling real estate.  This definition does not include books on real estate investing, in any form,

R.  "**Receiver**" means the Receiver appointed in this Permanent Injunction and any Deputy Receivers that shall be named by the Receiver.

S.  "**Receivership Entities**" means the Corporate Defendants.

T.  **"Relevant Communication"** means a written, oral, or Pictorial review, performance assessment, or other similar analysis of goods or services, including conduct related to the goods or services.

U.  "**Seller**" means a Person who offers for sale or sells a Business Opportunity.

V.  "**Settling Defendants**" means the Corporate Defendants, the Alvarez Defendants, and Bryce Chamberlain, individually, collectively, or in any combination.

## II.    PROHIBITION CONCERNING ECOMMERCE COACHING PROGRAMS AND REAL ESTATE COACHING PROGRAMS

The Settling Defendants are permanently restrained and enjoined from

advertising, marketing, distributing, promoting, offering for sale, or selling, or assisting in the advertising, marketing, distributing, promoting, offering for sale, or selling, of any eCommerce Coaching Program or Real Estate Coaching Program, even if it also is a Business Opportunity.

## III.    PROHIBITION CONCERNING EARNINGS CLAIMS

The Settling Defendants and their officers, agents, and employees, and all other persons in active concert or participation with them, who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are permanently restrained and enjoined from making any Earnings Claim or assisting others in making Earnings Claims, expressly or by implication, unless:

A. The Earnings Claim is non-misleading;

B. At the time the Earnings Claim is made, the Settling Defendants:

   1. have a reasonable basis for the claim;

   2. have in their possession written materials that substantiate for the claimed earnings and that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and

   3. make the written substantiation for Earnings Claims available upon request to the consumer, potential Purchaser or investor, and the FTC; and

C. Any earnings that form the basis for the Earnings Claims were achieved in compliance with the law.

## IV.    OTHER PROHIBITED BUSINESS PRACTICES

The Settling Defendants and their officers, agents, and employees, and all other persons in active concert or participation with them, who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any good or service, are permanently restrained and enjoined from:

A. Misrepresenting or assisting others in misrepresenting, expressly or by implication:

1. That consumers will learn everything they need to know to make substantial income at a workshop or event;

2. That a good or service:

   a.  will allow consumers to earn thousands of dollars in profit without needing a significant amount of money, good credit, or legal immigration status to succeed;

   b.  is offered only for a limited time, can be purchased only at a particular event, or is offered only to selected consumers who are vetted to ensure they will be successful; or

   c.  provides consumers with personalized assistance from experts or mentors.

3. That the Settling Defendants need detailed financial information from consumers to determine if the consumers qualify for a good or service;

4. That Purchasers will receive financing by purchasing a Business Opportunity or Investment Opportunity; or

5. Any other fact material to consumers concerning a good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

B. Advising consumers to increase their credit card limit or apply for additional credit cards to finance the purchase of any Business Opportunity or Investment Opportunity;

C. Failing to ensure that any testimonials the Settling Defendants use are truthful and non-misleading;

D. Failing to disclose whether any positive reviews of, or testimonials about, a good or service have been from owners, officers, employees, or agents of the Person offering the good or service for sale;

E. Providing consumers with any Documents in a language different from the one used to offer the good or service, including purchase agreements that outline the cancellation policy and include other material terms of purchase, provided, however, that Settling Defendants may provide documents to consumers in both English and the language of the offer simultaneously.

## V. PROHIBITION AGAINST VIOLATING THE DISCLOSURE REQUIREMENTS OF THE COOLING-OFF RULE

The Settling Defendants and their officers, agents, and employees, and all other persons in active concert or participation with them, who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling, or assisting in the advertising, marketing, distributing, promoting, offering for sale,

or selling, of any goods or services, are permanently restrained and enjoined from failing to:

A. Furnish buyers with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language as that principally used in the oral sales presentation provided, however, that nothing herein shall prohibit Settling Defendants from providing the aforementioned documents to buyers in multiple languages.

B. Furnish a "NOTICE OF CANCELLATION" or "NOTICE OF RIGHT TO CANCEL" in duplicate, that buyers can use to cancel the transaction, in accordance with 16 C.F.R. § 429.1, and

C. Orally inform buyers of their right to cancel the transaction.

## VI.    PROHIBITIONS CONCERNING CONSUMER REVIEWS AND COMPLAINTS

The Settling Defendants and their officers, agents, and employees, and all other persons in active concert or participation with them, who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling, or assisting in the advertising, marketing, distributing, promoting, offering for sale, or selling, of any good or service, are permanently restrained and enjoined from:

A. Prohibiting or restricting individual consumers' ability to communicate reviews, performance assessments, and similar analyses about goods, services, or conduct they have purchased;

B. Imposing a penalty or fee against individual consumers who engage in such communications;

C.  Suppressing the availability of truthful or non-defamatory negative comments or reviews of any Settling Defendants, or any of the Settling Defendants' goods or services, agents, or employees through any means, including threats, intimidation, non-disparagement clauses, conditioning refunds, and suppression of online content;

D.  Offering to any prospective customer a contract, or offering to any customer a renewal contract, that includes a Prohibited Agreement Provision;

E.  Requiring that a customer accept a Prohibited Agreement Provision as a condition of a Settling Defendant's fulfillment of its obligations under a customer contract; or

F.  Requiring that a customer accept a Prohibited Agreement Provision as a condition of a receiving a refund or a Settling Defendant not opposing a chargeback; or

G.  Representing, including through any notice, warning, threat to enforce, or attempt to enforce, to any purchaser of any good or service—regardless of when purchased—that any contract:

  1.  Prohibits consumers from speaking about or publishing truthful or non-defamatory negative comments or reviews about any Settling Defendant, or any Settling Defendant's goods, services, agents, or employees; or

  2.  Imposes any precondition, penalty, or fee on consumers speaking about or publishing any comments or reviews about any Settling Defendant, or any Settling Defendant's goods, services, agents, or employees.

Nothing in this Section shall require a Settling Defendant to publish or host the content of any person, affect any other legal duty of a party to a contract, or affect any cause of action arising from the breach of such duty.

## VII.   MONETARY RELIEF

A judgment in the amount of **$29,175,000.00** is entered in favor of the Commission against the Settling Defendants, jointly and severally, as monetary relief.

The Alvarez Defendants are ordered to surrender all funds and assets of the Receivership Entities and all funds and assets listed in Tables 1 and below to the Commission or its representative or agent.  To the extent not already in possession of the Receiver, the Alvarez Defendants shall deliver to the possession of the Receiver any assets identified in Table 1 within seven days of the entry of this Order and Permanent Injunction.  The Alvarez Defendants shall cooperate in good faith with the Commission to effectuate these transfers, and shall, if needed, execute such documents as are necessary to remit the entire balance of each account to the Commission.

For the financial institution accounts listed in Table 1, the financial institutions identified shall within five days of the entry of this Order and Permanent Injunction remit: (1) the entire balance of each account listed in Table 1; and (2) $284,998 from Wells Fargo Bank account number X0452 in the name of Richard & Sara Alvarez to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

| Table 1:   Assets and Interests to be Surrendered | | | |
|---|---|---|---|
| **Bank/Financial Accounts** | | | |
| **Name of Account** | **Institution** | **Account Number** | **Amount*** |
| Richard Alvarez, LLC | Wells Fargo | X2796 | $283,551.00 |

| RSA Ventures | Wells Fargo | X0856 | $5,161.24 |
| Richard & Sara Alvarez | Wells Fargo | X2289 | $419.44 |
| Richard & Sara Alvarez | Northwestern Mutual | X2457 | $241,118.63 |
| Cash from Safety Deposit Box | Wells Fargo | | $60,000.00 |
| Richard Alvarez IRA | Northwestern Mutual | | $131,239.27 |
| Sara Alvarez IRA | Northwestern Mutual | | $37,116.67 |
| | | | |

| Property Interests to Be Surrendered | Location | Identified Value |
| --- | --- | --- |
| Appliances purchased for Key in Homes LLC | 52 Ave Muñoz Rivera, Apt. 1802, Condominio Aquablue, San Juan PR, 00917 | $3,989.00 |
| Furniture purchased for Key in Homes LLC | 802 Calle Aguamarina, Isabela, 00662, Puerto Rico | $18,989.00 |
| Improvements to property owned by Key In Properties LLC | Calle Julio Flores 96 A, Bo. Sardinera, Fajardo, PR 00738 | $126,031.06 |
| American Express Business Platinum Payment on behalf of Vision Online Inc. | Account ending 5-16004 | $5,028.00 |
| Personal Property to Be Surrendered | Where Identified | Identified Value |
| 2021 Ford F-250 | June 23, 2023 Financial Disclosure of R. Alvarez | $70,000.00 |
| Hublot Classic Fusion watch | August 2, 2023 Letter | $10,820.00 |
| Women's Breitling watch | August 2, 2023 Letter | $3,400.00 |
| | | |

* Approximate amount or likely net value after fees or penalties.

Defendant Chamberlain is ordered to pay to the Commission **$35,000**.  Wells Fargo Bank, within five days of the entry of this Order and Permanent Injunction, and Defendant Chamberlain as applicable, shall execute any paperwork and issue any instructions necessary to remit $35,000 from currently frozen Wells Fargo Bank savings account X0911 to the Commission by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

Upon the payment and the completion of authorizations to enable all transfers described in this Section, the remainder of the judgment is suspended, subject to the Subsections below.

A. The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Settling Defendants' sworn financial statements and related documents (collectively, "**Financial Attestations**") submitted to the Commission, namely:

1. the Financial Statement of Individual Defendant Richard Alvarez signed on June 23, 2023, including the attachments and supplements;

2. the Financial Statement of Individual Defendant Sara Alvarez signed on June 23, 2023, including the attachments and supplements;

3. the Financial Statement of Vision Online, Inc. signed by Ivan Reybel Arista, CFO on June 23, 2023, including the attachments and supplements;

4. the Financial Statement of Ganadores IBR, Inc. signed by Richard Alvarez, CEO on June 23, 2023, including the attachments;

5. the Financial Statement of Vision Online Digital, LLC signed by Richard Alvarez, CEO on June 23, 2023, including the attachments;

6. the Financial Statement of Vision Online English, LLC signed by Richard Alvarez, CEO on June 23, 2023, including the attachments;

7. the Financial Statement of Vision Online Latino, LLC signed by Richard Alvarez, CEO on June 23, 2023, including the attachments;

8. the additional information submitted by e-mail from the Alvarez

Defendants' counsel Meghan Stoppel to the Commission on July 19, 2023, regarding Key Link Properties, LLC;

9. the additional documentation submitted by letter from the Alvarez Defendants' counsel Meghan Stoppel to the Commission dated August 2, 2023, listing various personal property owned by Richard and Sara Alvarez;

10. the additional information submitted by e-mail from the Alvarez Defendants' counsel Meghan Stoppel to the Commission on August 4, 2023, regarding certain bank accounts and credit cards held by Richard and Sara Alvarez; and

11. the additional information submitted by e-mail from the Alvarez Defendants' counsel Meghan Stoppel to the Commission on August 16, 2023, regarding Puerto Rico Car Rental, LLC.

12. the Financial Statement of Bryce Chamberlain signed on June 14, 2023, including the attachments.

B. The suspension of the judgment will be lifted as to any Settling Defendant if, upon motion by the Commission, the Court finds that Settling Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

C. If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Settling Defendant in the amount specified above (which the parties stipulate only for purposes of this Section represents the consumer

injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

**VIII.   ADDITIONAL MONETARY PROVISIONS**

A.  Settling Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.  The facts alleged in the Complaint against Settling Defendants will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order and Permanent Injunction, such as a nondischargeability complaint in any bankruptcy case.

C.  The facts alleged in the Complaint against Settling Defendants establish all elements necessary to sustain an action by the Commission pursuant to 11 U.S.C. § 523(a)(2)(A) and this Order and Permanent Injunction will have collateral estoppel effect for such purposes.

D.  Settling Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order and Permanent Injunction, in accordance with 31 U.S.C. §7701.

E.  All money received by the Commission pursuant to this Order and Permanent Injunction may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant

expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for relief is to be deposited to the U.S. Treasury.  Settling Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F.   The asset freeze imposed by the July 18, 2023 Preliminary Injunction Order (Doc. 52), is modified to permit the payment and transfers identified in this Order and Permanent Injunction.  Upon completion of those payment and transfers, the asset freeze as to Settling Defendants is dissolved.  Any existing asset freeze as to the remaining non-settling Defendants shall remain in full force and effect.

## IX.   CUSTOMER INFORMATION

The Settling Defendants and their officers, agents, and employees, and all other persons in active concert or participation with them, who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, are permanently restrained and enjoined from directly or indirectly:

A.   Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Settling Defendants must

provide it, in the form prescribed by the Commission, within fourteen days to the extent such information is in their custody, possession, or control.

B.  Disclosing, using, or benefitting from customer information, including the name, address, telephone number, e-mail address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Settling Defendant obtained prior to entry of this Order and Permanent Injunction in connection with the advertising, marketing, promoting, offering for sale, or selling of Defendants' Products; and

C.  Failing to destroy such customer information in all forms in their possession, custody, or control within thirty days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that: (1) customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order; and (2) the Receiver shall provide sufficient customer information to enable the Commission to efficiently administer consumer redress, and if a representative of the Commission requests in writing any information related to refunds, the Receiver must provide it, in the form prescribed by the Commission, within fourteen days.

## X.   COOPERATION

Richard Alvarez, Sara Alvarez, and Bryce Chamberlain must fully cooperate with representatives of the Commission in this case and in any Commission investigation related to or associated with the transactions or the occurrences that are the subject of

the Complaint.   Richard Alvarez, Sara Alvarez, and Bryce Chamberlain must provide truthful and complete information, evidence, and testimony.   Richard Alvarez, Sara Alvarez, and Bryce Chamberlain must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon five days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XI.   APPOINTMENT OF RECEIVER TO WIND DOWN THE CORPORATE DEFENDANTS AND DESTROY CUSTOMER INFORMATION

**Mark J. Bernet** has been appointed as Receiver of the Receivership Entities.  The Receiver shall continue to be solely the agent of this Court in acting as Receiver under this Order and Permanent Injunction and shall be accountable directly to this Court until such time as his obligations as set forth below are complete.  The Receiver is responsible for taking the necessary steps to liquidate the assets of the Receivership Entities, pay any net proceeds to the Commission to satisfy the monetary judgment in this Order and Permanent Injunction, and wind down the Receivership Entities.   The Receiver must complete all duties listed in this Order and Permanent Injunction within 210 days after entry of this Order and Permanent Injunction but any party or the Receiver may request that the Court extend the Receiver's term for good cause.  The Receiver shall have the following duties and authority:

A.  Full control of the Receivership Entities, including the ability to remove, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.  Exclusive custody, control, and possession of all assets and Documents of, or

in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C. Perform all acts necessary to protect, conserve, preserve, and prevent waste or dissipation of the Receivership Entities' assets until their sale;

D. Sell the nonliquidated Receivership Entities' assets and nonliquidated assets surrendered by the Settling Defendants using commercially-reasonable procedure without further order of the Court;

E. Enter into agreements in connection with the reasonable and necessary performance of the Receiver's duty to sell the Receivership Entities' assets, including, but not limited to, the retention of assistants, agents, or other professionals to assist in the sale of these assets;

F. Distribute to the Commission, without further order of the Court, the funds received from the sale of the Receivership Entities' assets;

G. Take any and all steps that the Receiver concludes are appropriate to wind down the Receivership Entities;

H. Store and secure the Corporate Defendants' electronically stored information ("**ESI**") until either a stipulation of all remaining parties in this proceeding or pursuant to court order.  The Receiver is authorized to use up to $30,000 of Receivership funds to pay for the storing, securing, and destruction of the Corporate Defendants' ESI.

I. Take exclusive custody, control, and possession of all Documents or assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors,

credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

J. Conserve, hold, manage, and prevent the loss of all assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

K. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order and Permanent Injunction;

L. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order and Permanent Injunction, and to incur, or authorize the making of, such agreements as may be necessary and advisable

in discharging his or her duties as Receiver.

M. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

N. Enter into and cancel contracts and purchase insurance as advisable or necessary;

O. Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

P. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order and Permanent Injunction, including but not limited to, actions challenging fraudulent or voidable transfers;

Q. Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate;

R. Maintain or open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments

and disbursements from the receivership estate from such accounts.   The Receiver shall serve copies of monthly account statements on all parties;

S.   Maintain accurate records of all receipts and expenditures incurred as Receiver;

T.   Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency.

## XII.   COMPENSATION FOR THE RECEIVER

The Receiver and all personnel hired by the Receiver, as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and Permanent Injunction and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.   The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty days after the date of entry of this Order and Permanent Injunction.   The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XIII.   RECEIVER'S FINAL REPORT AND DISBURSEMENT OF ASSETS

The Receiver shall liquidate the assets of the Receivership Entities, other than the ESI, as soon as practicable.   No later than 240 days from the date of the entry of this Order and Permanent Injunction, the Receiver shall file and serve on the parties a report (the "**Final Report of the Receiver**") to the Court that details the steps taken to dissolve the Receivership Entities' estate.   The Final Report of the Receiver shall include an accounting of the Receivership Entities' estate's finances and total assets and a

description of what other actions, if any, must be taken to wind down the Receivership. The Receiver shall mail copies of the Final Report of the Receiver to all known creditors of the Receivership Entities with a notice stating that any objections to paying any assets of the Receivership Entities to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order and Permanent Injunction must be submitted to the Court and served by mail upon the Receiver and the parties within thirty days of the mailing of the Final Report of the Receiver.

If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Receivership Entities' estate) are appropriate, the Receiver shall file an additional report or reports ("**Supplemental Report**") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

The Court will review the Final Report of the Receiver and any objections to the Final Report of the Receiver and, absent a valid objection, will issue an order directing the Receiver to: (1) pay the reasonable costs and expenses of administering the Receivership Entities' estate, including the compensation of the Receiver and the Receiver's personnel authorized by this Order and Permanent Injunction or other orders of this Court, and the actual out-of-pocket costs incurred by the Receiver in carrying-out his duties; and (2) pay all remaining funds to the Commission as partial satisfaction of the judgment.

With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report.  If the Receiver does not make a supplemental application for fees

and expenses within the specified period, or if funds remain in the reserve fund after the payments of fees and expenses approved by the Court in response to such a supplemental application, all funds remaining in the reserve fund shall be immediately paid to the Commission or its designated agent.

Upon Court approval of the Final Report, the Clerk of the Court is directed to return the Receiver's bond in the amount of $10,000 filed in this action as a requisite pursuant to the July 18, 2023 Preliminary Injunction Order (Doc. 52).

## XIV.   ORDER ACKNOWLEDGMENTS

The Settling Defendants shall obtain acknowledgments of receipt of this Order and Permanent Injunction as follows:

A. Each Settling Defendant, within seven days of entry of this Order and Permanent Injunction, must submit to the Commission an acknowledgment of receipt of this Order and Permanent Injunction sworn under penalty of perjury.

B. For five years after entry of this Order and Permanent Injunction, the Settling Defendants for any business that the Settling Defendants, individually or collectively with any other person, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order and Permanent Injunction to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and Permanent Injunction and all agents and representatives who participate in conduct related to the subject matter of the Order and Permanent Injunction; and (3) any business entity resulting from any change in structure as set forth in the Compliance

Reporting Section.  Delivery must occur within seven days of entry of this Order and Permanent Injunction for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which a Settling Defendant delivered a copy of this Order and Permanent Injunction, that Settling Defendant must obtain, within thirty days, a signed and dated acknowledgment of receipt of this Order and Permanent Injunction.

## XV.   COMPLIANCE REPORTING

Settling Defendants shall make timely submissions to the Commission as follows:

A.  One year after entry of this Order and Permanent Injunction, each Settling Defendant must submit a compliance report, sworn under penalty of perjury:

1.  Each Settling Defendant must: (a) identify the primary physical, postal, and e-mail address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with the Settling Defendant; (b) identify all of that Settling Defendant's businesses by all of their names, telephone numbers, and physical, postal, e-mail, and Internet addresses; (c) describe the activities of each business, including the goods or services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which the Alvarez Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order and Permanent Injunction; and (e) provide a copy of each

Order Acknowledgment obtained pursuant to this Order and Permanent Injunction, unless previously submitted to the Commission.

2. Additionally, each Settling Defendant must: (a) identify all telephone numbers and all physical, postal, e-mail and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For ten years after entry of this Order and Permanent Injunction, each Settling Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen days of any change in the following:

1. Each Settling Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that the Settling Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order and Permanent Injunction, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order and Permanent Injunction.

2. Additionally, each Settling Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b)

title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.  Each Settling Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within fourteen days of its filing.

D.  Any submission to the Commission required by this Order and Permanent Injunction to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be e-mailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Vision Online, et al, X230023.

## XVI.   RECORDKEEPING

Settling Defendants shall create the following records for ten years after entry of the Order and Permanent Injunction, and retain each such record for five years.

Specifically, the Corporate Defendants and the Settling Defendants for any business that such Settling Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

    A.  accounting records showing the revenues from all goods or services sold;

    B.  personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

    C.  records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

    D.  a copy of each unique advertisement or other marketing material disseminated to consumers;

    E.  recordings of any live presentations to groups of consumers; and

    F.  all records necessary to demonstrate full compliance with each provision of this Order and Permanent Injunction, including all submissions to the Commission.

**XVII.  COMPLIANCE MONITORING**

For the purpose of monitoring Settling Defendants' compliance with this Order and Permanent Injunction, including the Financial Attestations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order and Permanent Injunction:

    A.  Within fourteen days of receipt of a written request from a representative of the

Commission, each Settling Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.  For matters concerning this Order and Permanent Injunction, the Commission is authorized to communicate directly with each Settling Defendant.   Settling Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.   The person interviewed may have counsel present.

C.  The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Settling Defendants or any individual or entity affiliated with Settling Defendants, without the necessity of identification or prior notice.   Nothing in this Order and Permanent Injunction limits the Commission's lawful use of compulsory process, pursuant to 15 U.S.C. §§ 49, 57b-1.

D.  Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning the Alvarez Defendants, pursuant to 15 U.S.C.§ 1681b(a)(1).

## XVIII.  RETENTION OF JURISDICTION

This Court retains jurisdiction of this matter for purposes of construction,

modification, and enforcement of this Order and Permanent Injunction.

**DONE AND ORDERED** in Orlando, Florida on November 18, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party